**Lynwood A. CROFT, Plaintiff,**

v.

**Robert C. HARDER, Secretary, Social and Rehabilitation Services, et al., Defendants.**

**Civ. A. No. 86–1692–T.**

United States District Court,
D. Kansas.

Nov. 9, 1989.

Allan H. Bell, North Kansas City, Mo., and Robert Miller, Kansas City, Kan., for plaintiff.

Michael George, Legal Services, State Dept. of Social and Rehabilitation Services, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendants' motion for summary judgment and the plaintiff's motion to amend the complaint. Plaintiff's first amended complaint alleges claims under the Sixth and Fourteenth Amendments to the Constitution, and under 42 U.S.C. §§ 1983, 9501. Specifically, plaintiff's complaint alleges that he was deprived of life, liberty, or property without due process of law and was denied equal protection of the law. Plaintiff seeks an award of actual and punitive damages.

The defendants named in the first amended complaint are: Robert C. Harder, Secretary, Social and Rehabilitation Services; Gerald T. Hannah, Commissioner, Mental Health and Retardation Services; George W. Getz, Superintendent, Larned State Hospital; Hildreth Hultine, Superintendent, Larned State Hospital; and Larned State Security Hospital. Plaintiff's claims arise out of the plaintiff's confinement in the Larned State Hospital (State Hospital) and the Larned State Security Hospital (Security Hospital) from August 26, 1982 through December 10, 1984. Plaintiff alleges that he was deprived of his liberty interest in appropriate treatment in a setting and under conditions most supportive of his personal liberty; that he was denied placement in an alcohol treatment program as a reprisal for exposing unlawful conditions at the State Hospital and for his attempts to participate in the selection of a treatment program; that he was deprived of his right to send and receive mail and to communicate with his attorney; and that he was deprived of his liberty by being detained at the State Hospital.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion

"show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R. Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

For the purposes of the motion for summary judgment, the following facts are uncontroverted:

1. The plaintiff, Lynwood A. Croft, was originally committed to the Larned State Security Hospital on May 19, 1980 by the Sedgwick County District Court following a finding that he was not guilty by reason of insanity to one count of aggravated battery and one count of rape stemming from an incident which occurred on July 14, 1979.

2. After approximately one year in treatment at the Security Hospital, the plaintiff was administratively transferred to the Topeka State Hospital on July 13, 1981, pursuant to K.S.A. 22–3428. The plaintiff remained at Topeka State Hospital until March 11, 1982, when the Sedgwick County District Court granted him a conditional release.

3. One of the conditions of plaintiff's release by the Sedgwick County District Court was that the plaintiff should continue psychiatric treatment on an outpatient basis in the State of Texas.

4. In August of 1982, the Assistant Sedgwick County District Attorney filed an application to revoke the plaintiff's conditional release, alleging that plaintiff had violated the terms and conditions of his release. Thereafter, the plaintiff was committed to the Security Hospital on August 11, 1982 by an order of the Sedgwick County District Court pursuant to K.S.A. 22–3428.

5. On March 21, 1983, the plaintiff filed a written application for an annual insanity review hearing in the Pawnee County District Court. After proper continuances, plaintiff was provided an annual insanity review hearing on June 27, 1983.

6. Following the June 27, 1983 hearing, the Pawnee County District Court asked counsel to present closing arguments in writing. William Rein, counsel for the State Hospital, argued in his closing that the hospital had no objection to plaintiff receiving treatment at a comprehensive inpatient treatment facility such as the Parallax Drug Program, Inc., in Wichita, Kansas. Rein argued that plaintiff had re-

fused to cooperate in placement in such a facility and that the staff could not complete his placement without plaintiff's cooperation. Rein concluded that since the plaintiff was unwilling to take part in the program on an involuntary basis, the plaintiff should remain at the Security Hospital until such time as the staff felt he would not be a danger to himself or others.

7. The court had the matter under advisement until August 24, 1983. On that date, the Honorable C. Phillip Aldrich issued a Memorandum Opinion.

8. Judge Aldrich's order provided:

NOW ON THIS 24th day of August, 1983, the Court would find that petitioner [plaintiff] is in need of further care and treatment for the reason that he remains dangerous to himself and others. Petitioner's addiction problem, however, will not be helped by his further treatment at the Larned State Security Hospital.

J.W. Leisy, M.D. stated "I think he has made good progress at Larned State Security Hospital, and at present, think he could function as an out-patient if conditions of his probation are that out-patient psychotherapy are mandatory."

This Court would modify the finding of dangerousness upon the petitioner's voluntary admission to a three to four month in-patient treatment facility.

This Court would then seriously consider placing petitioner in an out-patient program if petitioner successfully completes the in-patient program.

IT IS SO ORDERED.

The parties disagree over the meaning of this order. This disagreement forms the basis of this action.

9. After the issuance of the August 24, 1983 order, William Rein, counsel for the State Hospital, became concerned as to what the Hospital's duty was with respect to the court's order. Rein contacted Judge Aldrich and plaintiff's attorney Jane Isern, for a clarification concerning the order. Rein, Isern, and Judge Aldrich agreed that it would be plaintiff's responsibility to find a suitable treatment facility that met the conditions set forth in the court's order. Plaintiff does not controvert this state-

ment; he asserts, however, that this agreement did not relieve the Hospital of its duty to use reasonable care to perform release planning services for plaintiff at such time as plaintiff indicated a willingness to attend a suitable program. This claim is not specifically alleged in the complaint, but is subsumed in the alleged right to treatment in the least restrictive environment.

10. The Hospital was not obligated to release plaintiff until such time as he had been accepted into a program and the court had approved the same. Plaintiff does not controvert this statement, but he adds that the Hospital's release planning duty began when plaintiff indicated to the Hospital that he wished to attend a program.

11. After the issuance of the August 24, 1983 order, the plaintiff made a number of conflicting representations to the staff of the State Hospital. On a number of occasions the plaintiff was uncooperative for treatment and indicated that he did not desire treatment. He additionally indicated that he was more interested in pursuing appeals with respect to Judge Aldrich's order. On other occasions, plaintiff stated that he was interested in treatment. Plaintiff has denied that he was uncooperative, but has set forth no specific facts to the contrary.

12. At no time did the State Hospital staff prevent or deprive plaintiff from contacting his attorneys. Progress notes show that plaintiff was given an opportunity to contact a variety of counsel.

13. On January 10, 1984, the court and plaintiff's counsel Jane Isern were informed of a change in circumstances relating to the Hospital staff's previous recommendation to the court concerning the order of August 24, 1983. The Hospital staff now felt that plaintiff was not a candidate for treatment due to his lack of good faith effort to receive treatment at the Hospital. Plaintiff has denied that Jane Isern was his attorney at that time; however, he has provided the court with no support for this assertion. Plaintiff disputed the statement that he lacked a good faith effort. He has asserted that the true reason was his "al-

leged lack of motivation." The court does not find this to be a genuine dispute.

14. On January 25, 1984, Fred Kepfield, a State Hospital social worker on maximum security, received a letter from the Community Addictive Treatment Center of Topeka, Kansas, stating that the plaintiff did not meet the criteria for entry into that program. The application submitted to the Community Addictive Treatment Center was prepared by plaintiff. Plaintiff did not request the Hospital staff to send records to the Community Addictive Treatment Center. Plaintiff does not specifically controvert this statement. Plaintiff has asserted, and the letter from the Community Addictive Treatment Center provides, that the information submitted with the application indicated that plaintiff did not appear to have a substance abuse problem. The letter continued, "if you feel that we did not have sufficient information, please contact us again." No further information was sent. Plaintiff has asserted that he was never shown this letter. The letter, however, was addressed to Mr. Kepfield, not to plaintiff. Plaintiff has asserted that the decision not to show the letter to plaintiff was made after consultation with Hospital attorney William Rein. Plaintiff has provided no support for this final statement.

15. On or about May 31, 1984, T.R. Gross, an attorney in Larned, Kansas, filed a petition for writ of habeas corpus in the Pawnee County District Court raising the issue that plaintiff had been imprisoned in violation of the August 24, 1983 court order. The Hospital's counsel, William Rein, responded to the petition. The court dismissed the plaintiff's habeas corpus action and held that plaintiff should pursue an annual insanity review hearing.

16. Plaintiff's counsel did not file for an annual insanity review hearing or appeal, but instead attempted to place the plaintiff in an inpatient treatment facility in accordance with the August 24, 1983 court order.

17. Arrangements were made to forward plaintiff's medical records and to transport him to the Parallax Program, Inc. in Wichita, Kansas, for interviewing and possible selection to that program. Prior to this time, plaintiff had refused to authorize the Hospital to send his records to Parallax. Plaintiff asserts that his attorney, Terry Gross, obtained the court orders for plaintiff's transportation to the interviews. The court orders for transportation reflect that plaintiff, through his attorney, requested the transportation. The transportation was to be provided by the Security Hospital.

18. Nancy Caldwell, a former employee of the Parallax Program, Inc., interviewed plaintiff for possible placement within the program. Caldwell determined that plaintiff was not a candidate to be accepted into the Parallax Program because he denied that he had a chemical abuse problem. Caldwell felt that plaintiff was truly not interested in treatment. Caldwell's conclusions were contained in a letter dated October 26, 1984, addressed to plaintiff. Caldwell's letter, while not entirely legible, appears to state:

I want to thank you for your cooperation in assisting in our assessing your involvement with mood altering chemicals.

As I stated during our interview on October 19, 1984, the information you share and the request for treatment you make are not of the nature we receive from persons who genuinely perceive a need for treatment for chemical abuse.

As I review your information, it is clear that you are not appropriate for admittance to Parallax Program, Inc. at this time. You seem eager to leave Larned State Hospital but you are not in touch with the issues which indicate a need for treatment for chemical abuse.

It appears that in an effort to think well of yourself and to present yourself favorably, you are minimizing the effects of your chemical use on you, on your behaviors, and on those involved with you. This would suggest that you do not perceive a need for treatment for chemical abuse, but have other motives in mind. This attitude is a deterrent to any

sort of personal growth and recovery and is not suited to treatment at Parallax. Dk. No. 78, Exh. S.

Plaintiff has attempted to controvert defendants' statement of Caldwell's reasons for rejecting plaintiff; however, the deposition testimony of Caldwell relied upon by plaintiff does not support his contentions. Caldwell did *not* testify that the reason Parallax rejected plaintiff was because the Hospital failed to recommend him. Plaintiff also states that Parallax rejected him even before his interview. Plaintiff relies on a letter written by his mother to his attorney, dated August 10, 1984. Plaintiff's mother stated in the letter that she had contacted a Pam McLucas and found out that Parallax would not be accepting plaintiff. This letter does not create an issue of fact regarding Caldwell's reasons for rejecting plaintiff following their interview in October 1984.

19. Plaintiff's sister made arrangements for plaintiff to apply to the Panhandle Alcoholism Council, Inc. in Panama City, Florida. The plaintiff signed a release authorizing the State Hospital to send records to the Panhandle Alcoholism Council on November 15, 1984. The plaintiff was accepted into the program on or about December 6, 1984.

20. Judge Aldrich of the Pawnee County District Court was informed of plaintiff's acceptance into the Panhandle Alcoholism Council program and executed an order on December 10, 1984, requiring the State Hospital to release plaintiff to attend that program. Plaintiff adds that it was his attorney, Terry Gross, who contacted the Judge and prepared the release order.

21. Defendants Robert C. Harder, Gerald T. Hannah, George W. Getz, and Hildreth Hultine were not members of plaintiff's treatment team from August 1983 to December 1984. These individuals did not make any decisions with respect to his treatment or recommendations to the court. Plaintiff does not dispute this statement, but alleges negligent supervision by these defendants.

22. Plaintiff has made a claim for business loss. A request for production of documents by defendants shows that plaintiff filed no tax returns for the years 1982 through 1986 and has no records concerning his business. Plaintiff attempts to controvert this statement, but has come forward with no documentation to show a genuine issue of fact regarding business loss.

The court will address plaintiff's claims against Larned State Security Hospital separately. The court will then address plaintiff's claims against Robert C. Harder (Harder), Gerald T. Hannah (Hannah), George W. Getz (Getz), and Hildreth Hultine (Hultine).

## I. LARNED STATE SECURITY HOSPITAL

■ Larned State Security Hospital is a State entity. The Eleventh Amendment to the Constitution bars this suit in federal court against the State of Kansas or one of its agencies or departments. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) [hereinafter *Pennhurst II*]. Further, the Supreme Court has recently held that neither the State nor State agencies are "persons" within the meaning of 42 U.S.C. § 1983, which is the plaintiff's principal claim. *See Will v. Michigan Department of State Police*, — U.S. —, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Accordingly, summary judgment will be entered in favor of defendant Larned State Security Hospital.

## II. OFFICIAL CAPACITY CLAIMS

■ A suit against a State official in his official capacity is the same as a suit against the State. *Will*, 109 S.Ct. at 2311; *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). Therefore, the claims brought against the remaining defendants in their official capacities are also barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Additionally, State officials acting in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. *Will*, 109 S.Ct. at 3212; *see*

*also id.* at 2311 n. 10 (State official sued in official capacity for injunctive relief is a person under § 1983). Summary judgment will therefore be granted to the defendants Harder, Hannah, Getz, and Hultine in their official capacities.

## III. INDIVIDUAL CAPACITY CLAIMS

Plaintiff's complaint appears to name the defendants Harder, Hannah, Getz, and Hultine in their official capacities only. In response to defendants' motion for summary judgment, in which defendants assert that they were sued solely in their official capacities, plaintiff asserts that they were sued in their individual capacities as well. Further, plaintiff seeks to amend his complaint to add specific allegations of individual capacity.

■■■ Plaintiff's complaint fails to designate expressly the nature of the suit. Instead, he has named the four defendants along with their job titles. In such a situation, the court may presume that the officials have been sued in their official capacities only. *Duckworth v. Franzen,* 780 F.2d 645, 649 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); *Kolar v. County of Sangamon,* 756 F.2d 564, 568 (7th Cir.1985). This presumption is not conclusive, since the complaint may be amended at any time to conform to the evidence. *Duckworth,* 780 F.2d at 649. Plaintiff is seeking leave to amend to specify individual capacity. Although plaintiff should have specifically alleged individual capacity, this action has proceeded as if it were both an official capacity and an individual capacity action. The defendants raised the defense of qualified immunity in the summary judgment briefing. Qualified immunity is a defense that only an individual is entitled to raise. *See Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). The defendants will suffer no prejudice through this amendment. The court will therefore address the merits of the individual capacity claims.

■■■ Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but provides a recovery for the deprivation of federal rights. Therefore, to establish a cause of action under section 1983, a plaintiff must allege (1) the deprivation of a federal right by (2) a person acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Watson v. City of Kansas City, Kansas,* 857 F.2d 690, 694 (10th Cir.1988). In an action under section 1983, the first inquiry is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980). In the present action, there is no dispute that, as state officials, the defendants acted under color of state law. The court must determine whether the plaintiff was deprived of any federally protected rights and, if so, whether this deprivation was caused by the defendants.

### A. Federally Protected Rights

Plaintiff's first amended complaint alleges claims arising under the Sixth and Fourteenth Amendments and 42 U.S.C. § 9501. Plaintiff's specific claims, as taken from the complaint, have been mentioned *supra* pp. 344–45, and will not be repeated here. In response to the defendants' motion for summary judgment, the plaintiff makes the following arguments: (1) that Judge Aldrich's August 24, 1983 order was in substance a conditional release order, resulting in the deprivation of plaintiff's liberty since he was not released; (2) that defendants Hultine and Getz are liable for their negligence which resulted in the deprivation of plaintiff's liberty; and (3) that defendant

Hannah is liable for his negligent supervision of Hultine and Getz; and (4) that defendant Harder is liable for his negligent supervision of Hannah.

In response to the defendants' supplemental brief on qualified immunity, the plaintiff also alleges: (1) the deprivation of the right of the criminally committed patient to appropriate treatment in the least restrictive environment therapeutically possible (allegedly implicating a liberty interest under the due process clause); and (2) denial of release planning as a reprisal for plaintiff's activity. Plaintiff does not identify a specific right involved with the latter alleged deprivation; the court assumes that it is subsumed within the due process liberty claim. While not entirely clear from plaintiff's pleadings, it appears that plaintiff is alleging the deprivation of the following rights.

### 1. Equal Protection of the Law

■ In his first amended complaint, plaintiff asserts an equal protection violation. In response to the defendants' motion for summary judgment, plaintiff has alleged no facts to support an equal protection claim. In fact, plaintiff does not even raise the issue in his responsive briefs. The court will assume that plaintiff has abandoned this claim. Further, without some showing sufficient to establish the existence of the elements of a claim for equal protection, plaintiff has failed to meet his burden under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate on this claim.

### 2. Mental Health Bill of Rights

Plaintiff relies on the Mental Health Bill of Rights, 42 U.S.C. § 9501, which provides in pertinent part:

It is the sense of the Congress that each State *should* review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require; and in making such review and revision *should* take into account the recommendations of the President's Commission on Mental Health and the following:

(1) A person admitted to a program or facility for the purpose of receiving mental health services *should* be accorded the following:

(A) The right to appropriate treatment and related services in a setting and under conditions that—

(i) are the most supportive of such person's personal liberty; and

(ii) restrict such liberty only to the extent necessary consistent with such person's treatment needs, applicable requirements of law, and applicable judicial orders.

(B) The right to an individualized, written, treatment or service plan

. . . . .

(C) The right to ongoing participation, ..., in the planning of mental health services to be provided to such person ...

. . . . .

(J) The right, in the case of a person admitted on a residential or inpatient care basis, to converse with others privately, to have convenient and reasonable access to the telephone and mails, ...

. . . . .

(N) The right to exercise the rights described in this section without reprisal, including reprisal in the form of denial of any appropriate, available treatment.

. . . .

42 U.S.C. § 9501(1) (emphasis added).

■ Plaintiff argues that the Mental Health Bill of Rights creates substantive rights enforceable in an action under 42 U.S.C. § 1983. Plaintiff relies on a similar bill of rights contained in the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6010 (currently codified at 42 U.S.C. § 6009). The Developmentally Disabled Bill of Rights provides, in part:

The treatment, services, and habilitation for a person with developmental disabilities *should* be designed to maximize the developmental potential of the person and *should* be provided in the setting

that is least restrictive of the person's personal liberty.

42 U.S.C. § 6010(2) (emphasis added). Plaintiff cites *Medley v. Ginsberg*, 492 F.Supp. 1294 (S.D.W.Va.1980) for the proposition that 42 U.S.C. § 6010 creates substantive rights enforceable under 42 U.S.C. § 1983. Plaintiff's reliance on *Medley v. Ginsberg* is misplaced. The United States Supreme Court has held that 42 U.S.C. § 6010 creates no substantive rights. *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 22–23, 101 S.Ct. 1531, 1542–43, 67 L.Ed.2d 694 (1981) [hereinafter *Pennhurst I*); *see also Pennhurst II*, 465 U.S. 89, 95, 104 S.Ct. 900, 905, 79 L.Ed.2d 67 (1984). The Supreme Court held in *Pennhurst I* that the lack of any sanctions for violation of the Developmentally Disabled Bill of Rights renders its provisions "hortatory, not mandatory." *Pennhurst I*, 451 U.S. at 24, 101 S.Ct. at 1543. Similarly, the Mental Health Bill of Rights cited by plaintiff contains only hortatory language. This court finds that the Mental Health Bill of Rights, 42 U.S.C. § 9501, creates no substantive federal rights that may be enforced in an action under 42 U.S.C. § 1983. Summary judgment shall be granted on this claim.

### 3. Sixth Amendment Right to Counsel

Plaintiff claims that he was denied the right to see his attorney. Uncontroverted fact 12, however, provides that none of the Hospital staff prevented plaintiff from contacting his attorney. Plaintiff has failed to show a genuine issue of fact on this claim. Summary judgment is therefore appropriate.

### 4. Right to Receive Mail

Plaintiff claims that he was denied the right to receive mail. Plaintiff claims that one letter, from the Community Addictive Treatment Center, was kept from him. Uncontroverted fact 14 establishes that this letter was indeed kept from plaintiff. That letter was addressed to Fred Kepfield, a member of the Hospital staff, and not to plaintiff. Plaintiff has cited no authority for the proposition that he has the right to receive mail that is not addressed to him.

Defendants are entitled to summary judgment on this claim.

### 5. Reprisals

Plaintiff alleges that he was denied placement in an alcohol treatment program as a reprisal for exposing unlawful conditions at the State Hospital and for his attempts to participate in the selection of a treatment program. Plaintiff's briefs contain only conclusory allegations. In his response to the defendants' motion for summary judgment, Dk. No. 93, at pp. 2–3, plaintiff makes the following allegations: In December 1982, plaintiff filed a grievance with Hultine and Harder, alleging that a female patient was being sexually abused by a charge aide with full knowledge of the ward staff. Plaintiff alleges that a hospital committee substantiated the grievance. [Plaintiff relies on an unidentified document in support of this allegation. This document states that the committee was provided with information that a personal relationship existed between the aide and the patient.] No action was taken by Hultine. [Hultine's answers to plaintiff's interrogatories reflect that Hultine felt that there was not substantial evidence to support plaintiff's allegations.] Plaintiff alleges that he subsequently addressed three letters to Hultine alleging that the staff was acting punitively toward him because of the grievance. Copies of these letters were sent to Harder, Getz, certain public officials, and the news media. Plaintiff also wrote a letter to Judge Aldrich, with copies sent to the Hospital. Plaintiff states in his brief, "It may be *surmised* that plaintiff's proclivity to write grievances to public officials and news media was an embarrassment to Defendants Hultine and Getz." Dk. No. 93, at p. 3 (emphasis added). Plaintiff continues in his brief that an important part of Hultine's job, according to her immediate supervisor Hannah, was public relations. Plaintiff concludes, "Given these pressures on Defendant Hultine and her staff, plaintiff *alleges* that his communications were an irritant which stirred a resistant attitude toward him among the hospital administration." *Id.* (emphasis added). Plaintiff additionally states in his brief, *id.* at p. 19,

that plaintiff's annual sanity review hearing was held at approximately the same time plaintiff was writing these letters. Plaintiff contends that "The hospital's immediate resistance to collaborating with plaintiff on any future release planning as set forth in the letters of William Rein of August 26, 1983, October 26, 1983 and November 10, 1983 *can only be explained* in the context of plaintiff's aforementioned correspondence." *Id.* (emphasis added). These conclusory allegations, unsupported by anything in the voluminous record before the court, are insufficient to create a genuine issue of material fact regarding reprisals for plaintiff's filing of grievances.

As for plaintiff's allegations of reprisals for his attempts to participate in the selection of a treatment program, the record reflects that plaintiff made conflicting statements to the staff at the Hospital regarding whether he desired treatment. Uncontroverted fact 11. Plaintiff's lack of a good faith effort to obtain treatment at the Hospital caused the Hospital staff to conclude that plaintiff was not a candidate for treatment elsewhere. Uncontroverted fact 13. In January of 1984, plaintiff was denying that he had a substance abuse problem. *See* uncontroverted fact 14. As late as October 1984, plaintiff was still denying that he had a substance abuse problem. *See* uncontroverted fact 18. In his response brief, Dk. No. 93, plaintiff admits that, at the time of Judge Aldrich's order, he (the plaintiff) would not agree to attend a three to four month inpatient alcohol program. Plaintiff admits that placement in such a program was impossible without his consent. *Id.* at 10–11. The record reflects that plaintiff did attempt to find a treatment program. However, plaintiff has come forward with only allegations that the Hospital staff subjected him to reprisals because of his attempts to participate in the selection of the treatment program. Plaintiff has come forward with nothing to show a genuine issue of fact on this claim.

### 6. Due Process

■ Plaintiff alleges that his liberty was infringed without due process of the law. Plaintiff argues that the individual defendants are liable in their individual capacities for their acts of negligence which resulted in the deprivation of plaintiff's liberty. Negligence is an insufficient basis upon which to hold a person liable under section 1983 for deprivations of due process. *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986). Neither the Supreme Court nor the Tenth Circuit addressed whether gross negligence or recklessness are sufficient. *Harris v. Maynard*, 843 F.2d 414, 415 (10th Cir.1988). The court believes that plaintiff's failure to allege the appropriate state of mind is fatal to his due process claims. However, to the extent that plaintiff's complaint may be read to allege something more than mere negligence, the court will address the specific liberty interests alleged.

■ Plaintiff asserts that he was deprived of liberty itself through his continued confinement in the State Hospital in violation of Judge Aldrich's order of August 24, 1983. This claim must fail. Judge Aldrich's order was not a conditional release order. The relevant Kansas statute provides in pertinent part:

> At the conclusion of the hearing [provided by this statute], if the court finds that the patient continues to be likely to cause harm to self or others, the court shall order the patient to remain in the state hospital, otherwise the court shall order the patient discharged or conditionally released.

K.S.A. 22–3428(3). In this case, Judge Aldrich found, following the statutory hearing, that plaintiff was "in need of further care and treatment for the reason that *he remains dangerous to himself and others.*" *See* uncontroverted fact 8. Pursuant to K.S.A. 22–3428(3), the court was required to order plaintiff to remain in the state hospital. The court had no authority to order plaintiff's conditional release upon a finding of dangerousness.

Plaintiff has asserted that he was deprived of his liberty through a transfer to

maximum security without procedural due process. This claim must fail for the lack of a factual basis. Plaintiff has alleged that he was denied procedural due process. However, he has come forward with no evidence to show a genuine issue of fact on this claim. Plaintiff has provided the court with neither deposition testimony nor affidavits to back up this allegation. Therefore, summary judgment is appropriate on this claim.

■ Plaintiff has asserted that he was denied the right to appropriate treatment in the least restrictive environment therapeutically possible. The court agrees that a limited right to treatment exists. *Cf. Youngberg v. Romeo*, 457 U.S. 307, 319, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982) (mentally retarded patient's liberty interests require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint). The Supreme Court has not addressed the issue of whether this minimally adequate training must occur in the least intrusive environment. *Id.* at 313 n. 14, 102 S.Ct. at 2457 n. 14. The court will address *infra* § III(B)–(C) whether this claim can survive summary judgment.

### B. Causation

■ For each of plaintiff's claims, he must establish that the defendants deprived or caused the deprivation of plaintiff's federally protected right. While the doctrine of *respondeat superior* does not operate in an action under section 1983, *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), personal participation of the supervisory officials is not required, either. *Wilson v. Attaway*, 757 F.2d 1227, 1241 (11th Cir.1985). Supervisory officials sued in their individual capacities are answerable in a section 1983 action only when there is a causal connection between their actions and the claimed deprivation. *Wilson*, 757 F.2d at 1241; *Medcalf v. State of Kansas*, 626 F.Supp. 1179, 1184 (D.Kan. 1986).

This court has previously held that for supervisory inaction to form the basis of liability under section 1983, the plaintiff must establish either (1) an official policy or custom which results in constitutional violations; or (2) conduct by officials exhibiting acquiescence in unconstitutional actions. *Kendel v. Orr*, 628 F.Supp. 326, 328 (D.Kan.1985). The Second Circuit has given a broader statement of how a defendant may be personally involved in a constitutional deprivation: (1) the defendant may have personally participated in the deprivation; (2) the supervisory official, after learning of a violation, may have failed to remedy the wrong; (3) the supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occur, or allowed such a policy or custom to continue; or (4) the supervisory official may be personally liable if he or she is grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

■ In the present case, the individual defendants cannot be held liable on any of plaintiff's claims. Plaintiff is relying solely on the theory of negligent supervision. Plaintiff has not alleged the gross negligence necessary to support a claim for negligent supervision. Further, plaintiff must show that the defendants were aware of prior misbehavior sufficiently to put them on notice of the need for improved training or supervision. *Wilson*, 757 F.2d at 1241; *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir.1979). Plaintiff has not alleged any prior misbehavior on the part of the Hospital staff.

### C. Qualified Immunity

■ As an alternative, the court finds that defendants are shielded from liability by qualified immunity. Plaintiff has claimed the right to treatment in the least restrictive environment. Plaintiff argues that this due process liberty right entitled him to be released from the State Hospital to an inpatient alcohol treatment facility at some earlier point in time. Assuming that the allegations of defendants' negligence are sufficient to state a claim for depriva-

tion of liberty, the individual defendants are entitled to qualified immunity.

 Qualified immunity is an affirmative defense that protects government officials from personal liability unless their actions violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once the qualified immunity defense is properly raised, a plaintiff must show: first, that the defendant's conduct violated federal law; and, second, that such law was clearly established when the alleged violation occurred. *Spielman v. Hildebrand*, 873 F.2d 1377, 1383 (10th Cir. 1989). To satisfy this burden, a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendants violated it. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 n. 2, 97 L.Ed.2d 523 (1987). Rather, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* 107 S.Ct. at 3039.

Some of the cases cited by plaintiff support the proposition that a constitutional right to treatment does exist for the criminally or involuntarily committed patient. The First Circuit, however, has held that even as late as 1987, no clearly established right to psychological treatment existed for involuntary committed psychiatric patients. *See Knight v. Mills*, 836 F.2d 659, 668 & n. 13 (1st Cir.1987); *cf. Woe v. Cuomo*, 729 F.2d 96, 105 (2d Cir.), *cert. denied*, 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984) (as of 1984, the Supreme Court had not addressed whether a constitutional right to psychological treatment exists).

The Courts of Appeals have refused to recognize the right to treatment in the least restrictive environment. *See S.H. v. Edwards*, 860 F.2d 1045, 1046 (11th Cir. 1988), *cert. denied*, — U.S. —, 109 S.Ct. 3187, 105 L.Ed.2d 696 (1989), *vacated, reh'g en banc granted*, 880 F.2d 1203 (11th Cir. 1989); *Lelsz v. Kavanagh*, 807 F.2d 1243, 1247, 1251 (5th Cir.), *cert. dismissed*, 483 U.S. 1057, 108 S.Ct. 44, 97 L.Ed.2d 821 (1987); *Society for Goodwill to Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1248–49 (2d Cir.1984); *Rennie v. Klein*, 720 F.2d 266, 269, 271 (3d Cir.1983) (en banc) (plurality and concurring opinions); *Phillips v. Thompson*, 715 F.2d 365, 367 (7th Cir.1983); *Johnson v. Brelje*, 701 F.2d 1201, 1210 (7th Cir.1983); *Armstead v. Pingree*, 629 F.Supp. 273, 276 (M.D.Fla. 1986). Thus, regardless of the exact parameters of the right to psychological treatment for the criminally or involuntarily committed patient, no clearly established right to treatment in the least restrictive environment existed in 1983–84. At the time of plaintiff's continued confinement in the State Hospital, there was no clearly established right for him to be released to a less restrictive environment, such as an inpatient alcohol treatment facility. Consequently, the defendants are entitled to qualified immunity.

## IV. MOTION TO AMEND COMPLAINT

Plaintiff has filed a motion for leave to file a second amended complaint. Plaintiff seeks to add specific allegations of individual capacity. Further, plaintiff seeks to add pendent state law claims for negligence under the common law and the Kansas Tort Claims Act. The defendants object to plaintiff's motion on the grounds that it is untimely and that an amendment would be prejudicial.

Rule 15(a) of the Federal Rules of Civil Procedure provides in pertinent part that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Specifically, the Supreme Court has held:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the

leave sought should, as the rules require, be 'freely given.'

*Id.* The decision whether to grant leave to amend is within the discretion of the district court. The court's decision regarding amendment is subject to reversal only for an abuse of that discretion. *Lease America Corp. v. Eckel,* 710 F.2d 1470, 1473 (10th Cir.1983).

The motion to amend is untimely, having been filed slightly over two months after the cutoff date for amending the pleadings. The court does not find this delay to be undue. Nor is there any allegation of dilatory motive on the part of plaintiff's counsel. The court will therefore turn to the merits of the motion to amend.

### A. Individual Capacity

The court previously stated, *supra* § III, that plaintiff would be granted leave to amend to specify individual capacity to conform to the evidence. The court has, in fact, treated this action as if it were an individual capacity action and has found summary judgment to be appropriate on the individual capacity claims.

### B. Pendent Claims

 Since diversity of citizenship is lacking, *see* First Amended Complaint, Dk. No. 69, plaintiff's proposed state law claims arise under the court's pendent jurisdiction. A federal court may not exercise pendent jurisdiction over a state law claim when the federal law claim is insubstantial. *Carey v. Continental Airlines, Inc.,* 823 F.2d 1402, 1404 (10th Cir.1987). If the federal law claim is dismissed before trial, even though it is not insubstantial in the jurisdictional sense, the state law claims should also be dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The court shall therefore decline to allow plaintiff to amend his complaint to add pendent claims.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion to amend is granted in part and denied in part; plaintiff's motion to amend to allege individual capacity is hereby granted, however, the court shall grant summary judgment on these claims; plaintiff's motion to amend to add pendent state law claims is hereby denied.

IT IS FURTHER ORDERED that defendant Larned State Security Hospital's motion for summary judgment is hereby granted.

IT IS FURTHER ORDERED that defendants Harder, Hannah, Getz, and Hultine's motion for summary judgment is granted as to all claims, both individual and official capacity.