5 F.3d 1374
 TEXACO, INC.; Texas-New Mexico Pipeline, Plaintiffs-Appellants,
v.
Peterson ZAH, successor to Peter MacDonald as President of
the Navajo Nation; David Brunt, Victor Joe, Bruce Keizer,
Joe Shirley, Lee Bergen, successors to Nelson Gorman and
Stella Saunders as Commissioner of the Navajo Tax
Commission; Derrick Watchman, successor to Stanley Wauneka
as Executive Director of the Navajo Tax Commission,
Defendants-Appellees,
Jim Baca, Commissioner of Public Lands for the State of New
Mexico; Tom Udall, Attorney General for the State of New
Mexico; Santa Fe Pacific Railroad Company, Cerrillos Land
Company, New Mexico Oil & Gas Association, Pittsburg &
Midway Coal Mining Company, Amici Curiae.
 No. 92-2141.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 29, 1993.
 
 Bradford C. Berge (Mark F. Sheridan, of Campbell, Carr, Berge & Sheridan, P.A., with him on the briefs), of Campbell, Carr, Berge & Sheridan, P.A., Santa Fe, NM, for plaintiffs-appellants.
 Paul E. Frye, of Nordhaus, Haltom, Taylor, Taradash & Frye, Albuquerque, NM, for defendants-appellees.
 Tom Udall, Atty. Gen. for the State of New Mexico; Christopher Coppin, Asst. Atty. Gen. for the State of New Mexico; and Harry N. Relkin, Sp. Asst. Atty. Gen. and Associate Counsel for the Com'r of Public Lands for the State of New Mexico, on the brief for amici curiae Jim Baca, Commissioner of Public Lands, and Tom Udall, Atty. Gen. for the State of New Mexico.
 Edmund H. Kendrick and Galen M. Buller, of Montgomery & Andrews, P.A., Santa Fe, NM, Kent R. Olson, of The Pittsburg & Midway Coal Min. Co., Englewood, CO, and Lynn H. Slade and Walter E. Stern, of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, on the brief for amici curiae New Mexico Oil & Gas Ass'n, The Pittsburg & Midway Coal Min. Co., and Santa Fe Pacific R. Co. and Cerrillos Land Co.
 Before McKAY, Chief Judge, TACHA, Circuit Judge, and KANE, District Judge*.
 TACHA, Circuit Judge.
 
 
 1
 Texaco Inc. ("Texaco") and Texas-New Mexico Pipeline ("Texas-New Mexico") (collectively "Appellants") appeal an order of the district court dismissing their declaratory judgment action against the Navajo Tax Commission and officials of the Navajo Tribe and the Navajo Tax Commission ("Navajo Nation") for failure to exhaust tribal remedies. We exercise jurisdiction under 28 U.S.C. Sec. 1291 and VACATE and REMAND for further proceedings.
 
 I. Background
 
 2
 Texaco is an oil and gas producer with operations in New Mexico; Texas-New Mexico operates an interstate pipeline which crosses New Mexico. Since 1978,[1] the Navajo Nation has assessed an Oil and Gas Severance Tax on Texaco and a Business Activity Tax on Texas-New Mexico for production and pipeline activities occurring outside the Navajo Reservation but within Navajo Indian Country.[2] Texaco has refused to pay any severance taxes for off-reservation production. Texas-New Mexico, however, has paid $111,114.00 in business activity tax for off-reservation pipeline activity.
 
 
 3
 In December 1986, Texas-New Mexico filed a refund claim with the Navajo Tax Commission, but for reasons not included in the record, neither party took further action on this refund claim. In February 1987, however, appellants filed an action in federal district court, seeking a declaration that the Navajo Nation lacked authority to assess the severance and business activity taxes on activities occurring outside the Navajo Reservation. At a June 30, 1992 hearing, the court dismissed the appellants' declaratory action, finding that they were required to exhaust tribal remedies before pursuing an action in federal district court. Texaco and Texas-New Mexico argue on appeal that the tribal exhaustion rule should not be applied in this case.II. Discussion
 
 
 4
 We review a dismissal on exhaustion grounds for an abuse of discretion. See United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992). The proper scope of the tribal exhaustion rule, however, is a matter of law which we review de novo.
 
 
 5
 The tribal exhaustion rule was created because of Congress's "strong interest in promoting tribal sovereignty, including the development of tribal courts." See Smith v. Moffett, 947 F.2d 442, 444 (10th Cir.1991). The rule provides that "as a matter of comity, a federal court should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies." Tillett v. Lujan, 931 F.2d 636, 640 (10th Cir.1991). This rule applies to cases in which the tribal court's jurisdiction is at issue, see National Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845, 855-56, 105 S.Ct. 2447, 2453, 85 L.Ed.2d 818 (1985), and its application does not depend upon the existence of a pending action in the tribal forum, see Moffett, 947 F.2d at 444; see also, e.g., Brown v. Washoe Housing Auth., 835 F.2d 1327 (10th Cir.1988). Appellants acknowledge this framework but assert that exhaustion of tribal remedies is improper in this case for two reasons. First, appellants contend that the Navajo Nation overstepped its boundaries by attempting to tax off-reservation activity, thereby divesting the tribal court of any jurisdiction to hear the dispute. Second, appellants argue that allowing the tribal court to hear the present case does not advance the purposes of the tribal exhaustion rule because the present dispute concerns taxation of non-Indians for off-reservation activity. We address these arguments in turn.
 
 A. Tribal Court Jurisdiction
 
 6
 Appellants' first argument, that the tribal court has no jurisdiction to hear the present dispute, has been rejected by the Supreme Court. In National Farmers, the Court held that the determination of whether tribal courts have jurisdiction over non-Indians in civil cases "should be conducted in the first instance in the Tribal Court itself," 471 U.S. at 856, 105 S.Ct. at 2453, unless the "assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." Id. n. 21 (citation omitted). Thus, based on National Farmers, the Navajo tribal court has the power to determine jurisdiction and then to hear the present taxation dispute unless appellants demonstrate that the Navajo Nation's assertion of tribal jurisdiction falls within one of the above exceptions.
 
 
 7
 We do not address the first exception to the tribal exhaustion rule because appellants have not alleged that the Navajo Nation asserts tribal jurisdiction in bad faith. With regard to the second exception, appellants fail to show that the tribal court's assertion of jurisdiction over the taxation of non-Indians for activities occurring outside the Navajo Reservation, but within Indian Country,[3] is patently violative of an express prohibition. Relying on case law, appellants contend that the tribal courts lack jurisdiction in this case because the Navajo Nation's authority over non-Indians terminates at the reservation boundary. See, e.g., Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 141, 102 S.Ct. 894, 903, 71 L.Ed.2d 21 (1982) (holding that Indian tribe has authority to tax non-Indians who do business on the reservation); United States v. Montana, 450 U.S. 544, 566, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981) (holding that Indian tribe retains inherent power to exercise civil authority over non-Indians on fee lands within the reservation). Such cases, however, merely hold that Indian tribes have authority over non-Indians when the activity occurs within reservation boundaries. They do not expressly stand for the proposition that a tribal court has no jurisdiction over non-Indian activity occurring outside the reservation, but within Indian Country. As a result, we cannot say that the tribal court's assertion of jurisdiction here is patently violative of an express jurisdictional prohibition. Moreover, we note that the Navajo Nation has expressly granted jurisdiction to its tribal courts over cases such as this. See Navajo Trib.Code tit. 24, Sec. 434(d) (vesting Navajo courts with jurisdiction "over any and all persons subject to this chapter ... [and] to hear and determine any challenge to the validity of this chapter").[4] This fact strengthens our conclusion that the tribal court's jurisdiction over the Navajo Nation's taxation scheme does not patently violate an express jurisdictional prohibition.[5]
 
 
 8
 Appellants also fail to show that exhaustion of tribal remedies would be futile. Appellants apparently contend that they lack an adequate opportunity to challenge the tribal court's jurisdiction because the Navajo tribal courts already have determined that they have jurisdiction over non-Indian activities occurring outside the reservation but within Navajo Indian Country. Even if true, however, this argument misses the mark. While the Navajo Tribal Code expressly grants the Navajo tribal courts jurisdiction over challenges to the validity of the Navajo tax code, see Navajo Trib.Code tit. 24, Sec. 434(d) (1986), the tribal courts continue to have authority to dismiss a case for lack of jurisdiction. See, e.g., Sandoval v. Tinian, Inc., 5 Navajo Rptr. 215, 217 (Navajo D.Ct.1986) (considering existence and propriety of tribal jurisdiction). Therefore, appellants will have an adequate opportunity to challenge the tribal court's jurisdiction.
 
 
 9
 In sum, appellants have failed to show why the Navajo Nation's assertion of tribal jurisdiction falls within one of the three exceptions to the tribal exhaustion rule. National Farmers therefore requires that appellants present their jurisdictional challenge to the tribal court before pursuing action in federal district court. See 471 U.S. at 856, 105 S.Ct. at 2453; see also Bank of Oklahoma v. Muscogee (Creek) Nation, 972 F.2d 1166, 1170 (10th Cir.1992) (stating that bank's challenge to tribal court jurisdiction over banking activity occurring off tribal land should be heard first in tribal court).
 
 B. Propriety of Exhaustion
 
 10
 Appellants argue that, even if the tribal court has jurisdiction, the tribal court is not the proper forum to determine the propriety of taxing non-Indians for activities occurring outside the Navajo reservation. Appellants correctly note that the tribal exhaustion rule does "not deprive the federal courts of subject-matter jurisdiction." LaPlante, 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8. Rather, "as a matter of comity," the federal courts should decline to hear a case when "strong federal policy concerns favor[ ] resolution in the nonfederal forum." Id.
 
 
 11
 The Supreme Court has identified three federal policy concerns behind the tribal exhaustion rule: (1) to further the congressional policy of supporting tribal self-government; (2) to promote the orderly administration of justice; and (3) to obtain the benefit of tribal expertise. National Farmers, 471 U.S. at 856-57, 105 S.Ct. at 2453-54. When the activity at issue arises on the reservation, these policies almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum. Thus, we have characterized the tribal exhaustion rule as "an inflexible bar to consideration of the merits of the petition by the federal court." Moffett, 947 F.2d at 445 (quoting Granberry v. Greer, 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987)); see also Crawford v. Genuine Parts Co., 947 F.2d 1405, 1408 (9th Cir.1991) ("When the dispute is a 'reservation affair,' ... there is no discretion not to defer."). When the dispute involves non-Indian activity occurring outside the reservation, however, the policies behind the tribal exhaustion rule are not so obviously served. Under these circumstances, we must depend upon the district courts to examine assiduously the National Farmers factors in determining whether comity requires the parties to exhaust their tribal remedies before presenting their dispute to the federal courts. See, e.g., Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803, 814-15 (7th Cir.1993) (noting that the propriety of tribal exhaustion depends upon a case by case examination of the comity factors).
 
 
 12
 This case does not present purely intra-reservation affairs. Rather, the Navajo Nation has assessed taxes on non-Indians for activities occurring outside the reservation borders, albeit within the Navajo Indian Country. On the record before us, we cannot say whether the district court abused its discretion in dismissing the federal action because the district court did not examine the National Farmers factors relative to this dispute. We therefore VACATE the district court's order and REMAND for further examination of the comity factors articulated in National Farmers.
 
 
 
 *
 The Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 The Business Activity Tax became effective on July 1, 1978. See Navajo Trib.Code tit. 24, Sec. 401 (1986). The Oil and Gas Severance Tax was adopted in 1985 but made retroactive to 1978. See id. Sec. 301. Oil and gas companies were given the option of paying either the Business Activity Tax or the Oil and Gas Severance Tax for the years 1978 to 1985
 
 
 [2]
 The Navajo Tribal Code defines Navajo Indian Country as "all land within the exterior boundaries of the Navajo Indian Reservation or of the Eastern Navajo Agency, all land within the limits of dependent Navajo Indian communities, all Navajo Indian allotments, and all other land held in trust for, owned in fee by, or leased by the United States to the Navajo Tribe or any Band of Navajo Indians." Navajo Trib.Code tit. 7, Sec. 254 (1986)
 
 
 [3]
 Indian Country is defined as
 (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government ... (b) all dependent Indian communities within the borders of the United States, ... and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.
 18 U.S.C. Sec. 1151. This definition, although found in the Major Crimes Act, applies to questions of both criminal and civil jurisdiction. See DeCoteau v. District County Court, 420 U.S. 425, 427 n. 2, 95 S.Ct. 1082, 1084 n. 2, 43 L.Ed.2d 300 (1975); see also Buzzard v. Oklahoma Tax Comm'n, 992 F.2d 1073, 1076 (10th Cir.1993). Although this definition is not as broad as the Navajo Tribal Code's definition of Navajo Indian Country, we do not dwell on this difference because appellants concede that much of the territory at issue falls within both definitions.
 
 
 [4]
 Generally, the Navajo Tribal Code defines Navajo court civil jurisdiction to reach "[a]ll civil actions in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur within the territorial jurisdiction of the Navajo Nation." Navajo Trib.Code tit. 7, Sec. 253(2) (1986). The territorial jurisdiction of the Navajo Nation is defined to be coextensive with Navajo Indian Country. Id. Sec. 254
 
 
 [5]
 We also point out that "although the criminal jurisdiction of the tribal courts is subject to substantial federal limitation, their civil jurisdiction is not similarly restricted." Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 15, 107 S.Ct. 971, 976, 94 L.Ed.2d 10 (1987) (citation omitted). Moreover, "Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status." United States v. Wheeler, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978)