**CALUMET GAMING GROUP–KANSAS, INC., Plaintiff,**

v.

**THE KICKAPOO TRIBE OF KANSAS, and Peter Beekman, Defendants**

and

**Kansas State Bank, Garnishee Defendant.**

**No. 97–2434–JWL.**

United States District Court, D. Kansas.

Oct. 9, 1997.

Reconsideration Denied Jan. 7, 1998.

Marc E. Elkins, Morrison & Hecker, L.L.P., Kansas City, MO, Kent Sullivan, Morrison & Hecker, L.L.P., Overland Park, KS, James R. Nelson, Michael H. Collins, Locke, Purnell, Rain & Harrell, Dallas, TX, for Plaintiff.

Todd Ruskamp, Joseph G. Matye, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, James W. Merz, Merz & Stacy, Oklahoma

**1324**

City, OK, Mario Gonzalez, Horton, KS, for Defendants.

John L. Weingart, Finley, Miller, Cashman, Weingart, Schmitt & Hill, Hiawatha, KS, for Garnishee Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is presently before the court on a motion by defendant The Kickapoo Tribe of Kansas (the Tribe) to dismiss for lack of subject matter jurisdiction or for failure to exhaust tribal remedies (Doc. 8). The court concludes that it does have federal question jurisdiction over the action, but that comity requires plaintiff to exhaust its remedies in the Tribal Court system. The court also concludes that this action should therefore be stayed and not dismissed. Accordingly, the court denies the motion, but the court stays further proceedings in this court pending fulfillment of the exhaustion requirement.

## I. Background [1]

The Tribe is a federally-recognized Indian tribe located on a reservation within Kansas. In 1995, the Tribe entered into a gaming compact with the State of Kansas allowing the Tribe to conduct gaming on its reservation. The Tribe subsequently enacted a tribal ordinance allowing gaming, which was approved by the National Indian Gaming Commission (NIGC).

On May 1, 1996, the Tribe entered into a consulting agreement with plaintiff Calumet Gaming Group–Kansas, Inc. (Calumet), by which Calumet would provide advice and recommendations concerning the Tribe's gaming operation; under the agreement, the Tribe maintained responsibility for the management of the operation. The parties also executed a loan agreement and a security agreement, and the Tribe executed a note in favor of Calumet.

In 1997, a dispute arose between Calumet and the Tribe concerning the consulting agreement. On April 10, 1997, the Tribe terminated the agreement. On April 18, Calumet demanded arbitration of the dispute

pursuant to a provision in the agreement. The Tribe then filed a complaint seeking declaratory and injunctive relief in the District Court for the Kickapoo Nation in Kansas (the Tribal Court). On May 20, 1997, the Tribal Court issued a temporary restraining order enjoining arbitration proceedings. On August 25, 1997, the Tribal Court denied Calumet's motion to dismiss and to compel arbitration. At the request of the parties, the Tribal Court approved an interlocutory appeal of that order to the Tribal Supreme Court.

On September 3, 1997, Calumet filed the instant action in this court. The complaint names the Tribe and the district judge of the Tribal Court as defendants, and names a bank holding funds of the Tribe as a garnishee defendant. The complaint alleges that this court has both diversity and federal question jurisdiction over the claims asserted therein. In Count I of the complaint, Calumet asserts that the Tribal Court exceeded its jurisdiction and seeks an injunction against further Tribal Court proceedings. In the remaining counts of the complaint, Calumet asserts Kansas state law claims; Calumet alleges that the Tribe breached the consulting agreement and is in default on the note, and it seeks damages, foreclosure of the security interest, garnishment, seizure of the collateral, and appointment of a receiver.

## II. Subject Matter Jurisdiction

### A. Diversity Jurisdiction

■ In its complaint, Calumet asserts that diversity jurisdiction exists because, as a South Dakota corporation, it is diverse from each defendant. The court disagrees. The diversity statute authorizes federal suits between citizens of different states. 28 U.S.C. § 1332(a)(1). The Tenth Circuit has held that "Indian tribes are not citizens of any state for purposes of diversity jurisdiction." *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir.1993). Consequently, Calumet and the Tribe are not citizens of different states, and the court may not exercise diversity jurisdic-

1. These facts are taken from the complaint filed in this action.

tion here.[2] *See also Romanella v. Hayward,* 114 F.3d 15, 16 (2d Cir.1997) (tribe is not a citizen of any state for diversity purposes); *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1140 (8th Cir.1974) (same).

■ Nevertheless, Calumet argues that the court has jurisdiction under section 1332 because of the presence of other diverse defendants. The court rejects this argument as well. Because the Tribe is not a citizen of any state, Calumet has not met the requirement of complete diversity. *See Depex Reina 9 Partnership v. Texas Int'l Petroleum Corp.,* 897 F.2d 461, 463 (10th Cir.1990) (complete diversity required); *see also Romanella,* 114 F.3d 15 (same result in suit involving additional defendants). In this regard, the court notes that statutes conferring federal jurisdiction are to be strictly construed, and doubts are to be resolved against federal jurisdiction. *United States ex rel. Fine v. MK–Ferguson Co.,* 99 F.3d 1538, 1543 (10th Cir.1996).

### B. Federal Question Jurisdiction

■ The court also reject's Calumet's assertion that its state law claims impart federal question jurisdiction. Federal question jurisdiction under 28 U.S.C. § 1331 exists "when the cause of action is created by federal law or turns on a substantial question of federal law." *Morris v. City of Hobart,* 39 F.3d 1105, 1111 (10th Cir.1994).

Calumet argues that its state law claims implicate the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701–2721. That statute provides a regulatory framework for gaming activities on Indian lands. *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1548 (10th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 45, 139 L.Ed.2d 11 (U.S.1997). Among other requirements under IGRA for the operation of a gaming enterprise on Indian lands, a tribe must enter into a compact with a state and adopt a tribal ordinance, each of which must be approved by the NIGC. 25 U.S.C. § 2710. IGRA also allows a tribe to enter into a management contract for the operation of the gaming enterprise, subject to NIGC approval. *Id.* § 2711.

In its state law claims, Calumet seeks state law remedies for breach of a consulting agreement and default on a loan. Such claims are not created by IGRA, nor do they turn on a substantial question involving that statute. A claim involving the validity of the compact with the state under IGRA would likely invoke the court's federal question jurisdiction. *See Pueblo of Santa Ana,* 104 F.3d at 1557 (interpretation of IGRA presents a federal question); *Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050, 1055–56 (9th Cir.1997). Similarly, a claim involving federal regulations concerning management contracts under IGRA might raise a federal question. *See Bruce H. Lien Co. v. Three Affiliated Tribes,* 93 F.3d 1412, 1421 (8th Cir.1996) (validity of management contract does not raise a federal question per se, but complicated dispute involving IGRA regulations does invoke federal question jurisdiction); *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.,* 63 F.3d 1030, 1047 (11th Cir.1995) (claims made under regulations regarding management contracts). Here, however, the dispute concerns a consulting agreement that is not subject to IGRA, and the statute need not be interpreted or applied. Accordingly, Calumet's state law claims do not raise a federal question.

■ Nevertheless, the court is not without jurisdiction here. Count I of Calumet's complaint, by which it challenges the scope of the Tribal Court's jurisdiction, raises a federal question under section 1331. *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 852, 105 S.Ct. 2447, 2451–52, 85 L.Ed.2d 818 (1985); *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498, 1501 (10th Cir.1997). The court exercises pendent jurisdiction over the related state law claims. *See Plott v. Griffiths,* 938 F.2d 164, 166–67 (10th Cir.1991). Accordingly, the court denies the Tribe's motion to dismiss for lack of subject matter jurisdiction.

---

**2.** Calumet does not contend that the Tribe operates its gaming enterprise as a corporate entity

instead of in its constitutional capacity. *See Gaines,* 8 F.3d at 729–30.

### III. Exhaustion of Tribal Remedies

The Tribe also seeks to dismiss Calumet's claims because of Calumet's failure to exhaust its remedies in the Tribal Court. The tribal exhaustion doctrine emanates from the Supreme Court's decision in *National Farmers.* In that case, a Crow Indian minor obtained a default judgment in tribal court against the local public school district after being struck by a motorcycle at the school, which was located on land owned by the State of Montana but within the Crow Indian Reservation. *National Farmers,* 471 U.S. at 847, 105 S.Ct. at 2449. The school district and its insurer then brought suit in federal district court and obtained an order restraining the tribe and tribal court from asserting jurisdiction over the matter. *Id.* at 848, 105 S.Ct. at 2449–50. The Supreme Court held that the issue of the scope of the tribal court's jurisdiction presented a federal question for purposes of federal court subject matter jurisdiction. *Id.* at 852–53, 105 S.Ct. at 2451–52.

The Court then held that the plaintiffs were required, as a matter of comity, to exhaust their remedies in the tribal court system before challenging the tribal court's jurisdiction in federal court. *Id.* at 855–57, 105 S.Ct. at 2453–54. The court explained its reasoning and the policy considerations supporting its decision as follows:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
>
> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover the orderly administration of justice in the

federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*Id.* at 855–57, 105 S.Ct. at 2453–54 (footnotes omitted). The Court did set out three possible exceptions to the tribal exhaustion requirement:

> We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

*Id.* at 857 n. 21, 105 S.Ct. at 2453 n. 21 (citation omitted). Finally, the Court remanded the case to the district court to determine whether "the federal action should be dismissed, or merely held in abeyance pending the development of further Tribal Court proceedings." *Id.* at 857, 105 S.Ct. at 2454.

The Supreme Court reaffirmed the tribal exhaustion doctrine in *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). There, after an accident on their reservation, members of the Blackfeet Indian Tribe brought suit in tribal court alleging tort claims against other Tribe members and a claim against an insurance company for bad faith refusal to settle. *Id.* at 11, 107 S.Ct. at 973–74. The insurer subsequently brought suit in federal district court alleging diversity jurisdiction and seeking a declaration that it had no duty to

defend or indemnify with respect to the accident. *Id.* at 12–13, 107 S.Ct. at 974–75. The Supreme Court held that the tribal exhaustion requirement applies as well where the federal court's jurisdiction is based on diversity: "Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction." *Id.* at 16, 107 S.Ct. at 976. Regarding that policy, the Court noted that "[t]ribal courts play a vital role in tribal self-government," and that a "federal court's exercise of jurisdiction over matters relating to reservation affairs can … impair the authority of tribal courts." *Id.* at 15, 107 S.Ct. at 976.

In *Iowa Mutual,* the Court also made clear that exhaustion of tribal court remedies "is required as a matter of comity, not as a jurisdictional prerequisite." *Id.* at 16 n. 8, 107 S.Ct. at 976 n. 8. The Court stated that exhaustion includes, at a minimum, tribal appellate court review. *Id.* at 17, 107 S.Ct. at 977. If the tribal appellate court upholds a finding of tribal court jurisdiction, the plaintiff may then challenge that ruling in federal court. *Id.* at 19, 107 S.Ct. at 978. Finally, the Court remanded to the district court to determine whether dismissal or a stay was appropriate. *Id.* at 20 n. 14, 107 S.Ct. at 978 n. 14.

The Court also commented indirectly on the tribal exhaustion doctrine in *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). The Court there cited *National Farmers* and *Iowa Mutual* as examples of cases that "treat nonexhaustion as an inflexible bar to consideration of the merits of the petition by the federal court." *Id.* at 131, 131 n. 4, 107 S.Ct. at 1673 n. 4. The Court distinguished such an extreme treatment from an intermediate approach allowing a court discretion to reach the merits of a suit. *Id.*

The Tenth Circuit has taken a "strict view of the tribal exhaustion rule," *Kerr–McGee,* 115 F.3d at 1507, and has required such exhaustion in a number of cases. *See, e.g., id.* at 1508; *United States v. Tsosie,* 92 F.3d 1037, 1043 (10th Cir.1996); *Pittsburg & Midway Coal Mining Co. v. Watchman,* 52 F.3d 1531, 1541 (10th Cir.1995); *Texaco, Inc. v. Zah,* 5 F.3d 1374, 1378 (10th Cir.1993); *Bank of Okla. v. Muscogee (Creek) Nation,* 972 F.2d 1166, 1171 (10th Cir.1992); *Smith v. Moffett,* 947 F.2d 442, 444 (10th Cir.1991); *Tillett v. Lujan,* 931 F.2d 636, 641 (10th Cir.1991); *Brown v. Washoe Housing Authority,* 835 F.2d 1327, 1328 (10th Cir.1988); *Superior Oil Co. v. United States,* 798 F.2d 1324, 1331 (10th Cir.1986).

The Tenth Circuit has stated the tribal exhaustion rule from *National Farmers* and *Iowa Mutual* as follows: "[T]he federal courts should not consider a suit arising from activities on tribal land until the plaintiff has exhausted his or her tribal court remedies." *Brown,* 835 F.2d at 1327. The Tenth Circuit has also reiterated that a party's status as a non-Indian is immaterial for this purpose. *Smith,* 947 F.2d at 444.

 Calumet argues that exhaustion is not required here under the exceptions set out in *National Farmers.* With respect to the first exception, Calumet contends that the Tribe's bad faith is evidenced by its failure to pay amounts due under the consulting agreement, its refusal to give effect to the arbitration provision, its termination of the agreement without proper notice and an opportunity to cure, and its failure to abide by a "verbal" settlement agreement reached by the parties.[3] The court concludes that this exception does not preclude application of the tribal exhaustion rule in this case. The exception requires bad faith or a desire to harass in the *assertion of tribal court jurisdiction. National Farmers,* 471 U.S. at 857 n. 21, 105 S.Ct. at 2454 n. 21. The instances of bad faith alleged by Calumet generally go to the merits of the dispute— i.e., whether the contract has been breached—instead of the Tribal Court's assertion of jurisdiction here. *See Harvey v. Star,* 96 F.3d 1453 (10th Cir.1996) (it is improper for the court to involve itself in the underlying dispute in determining whether the bad faith exception applies). Moreover, Calumet has

---

3. Calumet also points to a failure by the Tribe to permit inspection of the collateral. It appears, however, that the Tribe has now permitted such access.

not provided an affidavit or other evidence supporting its allegation concerning the alleged settlement agreement. Finally, the fact that the consulting agreement expressly provides for Tribal Court jurisdiction in certain instances further weighs against a finding that Tribal Court jurisdiction was asserted in bad faith here.

■ Calumet also asserts that exhaustion is not required because the Tribal Court action is "patently violative of express jurisdictional prohibitions." *National Farmers,* 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21. The Tenth Circuit has defined this exception very narrowly:

> A substantial showing must be made by the party seeking to invoke this exception to the tribal exhaustion rule. In fact, tribal courts rarely lose the first opportunity to determine jurisdiction because of an "express jurisdictional prohibition." Cases in which tribal courts are not given the first opportunity to determine their jurisdiction typically involve situations where the federal court has exclusive jurisdiction or where tribal jurisdiction is foreclosed by sovereign immunity.

*Kerr-McGee,* 115 F.3d at 1502 (citations omitted). Calumet has not shown that the present case involves either situation mentioned in *Kerr-McGee.* Calumet cites the Federal Arbitration Act (FAA), which requires the enforcement of valid arbitration provisions, *see* 9 U.S.C. § 2, as the necessary jurisdictional prohibition. That statute, however, does not expressly limit tribal court jurisdiction. Presumably, the tribal court could enforce the FAA as well as the federal courts. The court concludes that the second exception to the exhaustion rule does not apply here.

■ The third exception involves a situation "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction." *National Farmers,* 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21. A plaintiff may not speculate regarding such futility; an adjudication of the issue must be sought in the tribal court. *Bank of Okla.,* 972 F.2d at 1170. Calumet asserts that the common representation by counsel in this matter of the

Tribe and the Tribal Court Judge creates a conflict and raises the appearance of impropriety. The bias of a tribal court is foremost a question for that court, however. *Id.* at 1171. Moreover, the rulings of the Tribal District Court are subject to review by an appellate tribal court, where any judicial errors may be corrected. The court concludes that Calumet has an adequate opportunity within the Tribal Court system to challenge jurisdiction.

■ Accordingly, because no exceptions apply here, the question of the scope of the Tribal Court's jurisdiction must first be decided by the Tribal Court. In *National Farmers,* the Supreme Court made clear that the "careful examination" of the many factors that bear on that question should be conducted first by the tribal court whose jurisdiction is at issue. 471 U.S. at 855–56, 105 S.Ct. at 2453–54. For the same reason, comity requires that Calumet exhaust its remedies in the Tribal Court before this court reaches the merits of Calumet's complaint.

The court feels that it must also address the scope of the necessary exhaustion here, an issue that the parties have essentially ignored. The parties have noted that the Tribal Court has permitted an interlocutory appeal of its jurisdictional ruling, thus suggesting a possible assumption that only the jurisdictional question need be resolved before the parties may return to this court. The court rejects any such assumption, however, and concludes that Calumet must exhaust its Tribal Court remedies with respect to the underlying claims as well.

It is apparent from the caselaw that in the Tenth Circuit tribal court remedies must be exhausted with respect to issues other than the scope of the tribal court's jurisdiction. For instance, the Tenth Circuit's statements of the exhaustion rule do not limit its application to jurisdictional issues. In *Brown,* as stated above, the Tenth Circuit stated that "federal courts should not consider a suit arising from activities on tribal land until the plaintiff has exhausted his or her tribal court remedies." *Brown,* 835 F.2d at 1327. In *Texaco,* the court stated: "The rule provides that 'as a matter of comity, a federal court

should not exercise jurisdiction over cases arising under its federal question or diversity jurisdiction, if those cases are also subject to tribal jurisdiction, until the parties have exhausted their tribal remedies.'" *Texaco,* 5 F.3d at 1376 (quoting *Tillett,* 931 F.2d at 640). In *Brown* and *Bank of Oklahoma,* the court appeared in fact to require exhaustion with respect to issues other than jurisdiction. *See Bank of Okla.,* 972 F.2d 1166 (involving interpleader action and breach of contract cross-claim); *Brown,* 835 F.2d 1327 (involving breach of contract claim). In *Texaco,* the Tenth Circuit stated that, based on *National Farmers,* the tribal court had "the power to determine jurisdiction *and then to hear the present taxation dispute*" unless one of the three exceptions applied. *Texaco,* 5 F.3d at 1376 (emphasis added).

■ Calumet focuses on its non-jurisdictional claims in arguing that the three policy considerations listed in *National Farmers* would not be served by requiring exhaustion here. In *Pittsburg & Midway,* which involved a tax imposed by an Indian tribe for activity taking place outside its reservation, the Tenth Circuit required an "assiduous examination" of the three factors to determine whether comity required exhaustion of tribal remedies in that case. *Pittsburg & Midway,* 52 F.3d at 1537. The Tenth Circuit has held, however, that such a careful consideration of the policy factors is required only for situations involving non-Indian activity occurring outside the reservation, in which case "the policies behind the tribal exhaustion rule are not so obviously served." *Id.* (quoting *Texaco,* 5 F.3d at 1378). No detailed comity analysis (beyond considering whether any of the three exceptions apply) is necessary if the activity at issue arises on the reservation; "when the dispute is a 'reservation affair' there is no discretion not to defer" to the tribal court. *Kerr–McGee,* 115 F.3d at 1507 (quoting *Texaco,* 5 F.3d at 1378). In such instance, the tribal exhaustion rule acts as an "inflexible bar" to the federal court's consideration of the merits, as described by the Supreme Court in *Granberry. Texaco,* 5 F.3d at 1378.

The present action is such a "reservation affair" because it concerns performance of contracts relating to a gaming operation located on the Tribe's reservation. This case is therefore similar to *Brown,* in which a non-Indian corporation alleged that a tribal entity breached a contract under which the corporation was to construct housing on the reservation. 835 F.2d at 1327. The Tenth Circuit held that comity required exhaustion in that case. *Id.* at 1328. The same result is appropriately reached here without a separate consideration of the policy factors set out in *National Farmers.* Those factors support exhaustion here for the same reasons that led to the Supreme Court's adoption of the tribal exhaustion rule in the first place.

■ Furthermore, "[t]he policies behind abstention are most strongly implicated when a federal court action is brought after a tribal court action has already been filed," *Pittsburg & Midway,* 52 F.3d at 1537, as has occurred in this case. This fact implicates Congress's commitment to tribal self-government, a policy recognized by the Supreme Court in *National Farmers,* 471 U.S. at 856, 105 S.Ct. at 2453–54.

> "The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system...." If exhaustion is not required, the legitimacy and independence of the tribal court system come into serious question. Allowing litigants to bypass tribal institutions simply by filing an action in federal court would undercut the tribal court system. "[U]nconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority...."

*Pittsburg & Midway,* 52 F.3d at 1537–38 (citations omitted) (quoting *Iowa Mutual,* 480 U.S. at 16–17, 107 S.Ct. at 976).

Calumet also argues that it could not obtain relief against defendant bank in the Tribal Court and that the provisions of the consulting agreement preclude Tribal Court jurisdiction in this case. Under *National Farmers,* however, such arguments going to the Tribal Court's jurisdiction must first be directed to the Tribal Court. *See Bank of Okla.,* 972 F.2d at 1169 (whether a tribal court would have jurisdiction over a bank is a question for the tribal court).

For the foregoing reasons, the court concludes that the Tenth Circuit's interpretation of the tribal exhaustion doctrine requires that Calumet exhaust its remedies in the Tribal Court concerning all of its claims before it may raise those issues in this court.

■ In applying the tribal exhaustion rule, the district court has discretion either to stay or to dismiss the federal action. *See Iowa Mutual*, 480 U.S. at 20 n. 14, 107 S.Ct. at 978 n. 14; *National Farmers*, 471 U.S. at 857, 105 S.Ct. at 2454; *Brown*, 835 F.2d at 1329. The Tenth Circuit "has expressed a general preference in abstention cases for issuance of a stay rather than dismissal." *Allen v. Board of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 404 (10th Cir.1995) (discussing *Colorado River* abstention); *see also Iowa Mutual*, 480 U.S. at 16 n. 8, 107 S.Ct. at 976–77 n. 8 (tribal exhaustion rule is analogous to *Colorado River* abstention). A stay is preferred because if the proceedings in the other court "do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action." *Allen*, 68 F.3d at 404 (quoting *Fox v. Maulding*, 16 F.3d 1079, 1083 (10th Cir.1994)).

■ Calumet has requested a stay here, and the Tribe has not offered any reason why the court should dismiss the action instead. Therefore, the court orders that this action be stayed pending Calumet's exhaustion of its remedies in the Tribal Court, in accordance with this opinion.[4] After such exhaustion, the Tribal Court's exercise of jurisdiction may be reviewed in this court. *Iowa Mutual*, 480 U.S. at 19, 107 S.Ct. at 978; *Brown*, 835 F.2d at 1329.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Tribe's motion to dismiss (Doc. 8) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** further proceedings in this court are stayed until Calumet has exhausted its remedies in the Tribal Court. The parties shall provide the court notice of the case's status within 10 days after such exhaustion is complete or by April 10, 1997, if exhaustion is not yet complete by that date.

**IT IS SO ORDERED.**

### *MEMORANDUM AND ORDER*

This action involves a dispute between plaintiff Calumet Gaming Group–Kansas, Inc. (Calumet) and defendant The Kickapoo Tribe of Kansas (the Tribe) concerning a consulting agreement between the parties by which Calumet would advise the Tribe on matters relating to the Tribe's gaming operation on its Kansas reservation. Calumet filed the instant action, in which it seeks to enjoin proceedings initiated by the Tribe in the District Court for the Kickapoo Nation in Kansas (the Tribal Court), on the ground that the Tribal Court exceeded its jurisdiction when it enjoined arbitration proceedings. Calumet has also brought substantive claims under state law relating to the underlying contract dispute.

On October 9, 1997, the court issued a Memorandum and Order denying the Tribe's motion to dismiss the action. *See Calumet Gaming Group–Kan., Inc. v. Kickapoo Tribe of Kan.*, 987 F.Supp. 1321 (D.Kan.1997). The court ruled that it did have jurisdiction because Calumet's challenge to the scope of the Tribal Court's jurisdiction raised a federal question under 28 U.S.C. § 1331, and the court exercised pendent jurisdiction over the state law claims. The court ruled, however, that the tribal exhaustion doctrine required that the action be stayed or dismissed to allow the Tribal Court first to consider Calumet's claims, including the substantive claims brought under state law. The court granted Calumet's request to stay the action instead of dismissing it. *Id.*

The matter is presently before the court on Calumet's motion, pursuant to Fed. R.Civ.P. 60(b)(1) and D. Kan. Rule 7.3, to

---

4. Calumet states that a stay was appropriate so that the court could "monitor the Tribal proceeding's progress to ensure a fair and expedient resolution." Any active oversight of the Tribal Court, however, would seem to undermine the principles of comity that provide the basis for this decision. Thus, the court will not "monitor" the proceedings, but will abide their outcome and await any further request for action.

reconsider or amend the court's October 9 order staying the action (Doc. 30). For the reasons set forth below, Calumet's motion is denied.

 The Tribe argues that Calumet's motion is untimely. Rule 7.3 requires that motions under that rule be filed within 10 days after the order. D. Kan. Rule 7.3. The order here was filed on October 9, 1997. Therefore, accounting for weekends and one federal holiday, any motion under rule 7.3 was due on October 24, 1997. Calumet's motion was filed on October 29. Accordingly, the court denies Calumet's motion as untimely to the extent that it is based on rule 7.3.[1]

The court agrees with Calumet that its motion is timely to the extent that it is based on rule 60(b). The court concludes, however, that Calumet is not entitled to any relief under that rule.[2]

 Calumet bases its motion on rule 60(b)(1), which provides for reconsideration of an order "where the judge has made a substantive mistake of law or fact." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir.1996). Relief under that provision is only available for "obvious errors of law." *Van Skiver v. United States*, 952 F.2d 1241, 1244 (10th Cir.1991). The Tenth Circuit has stressed that "relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Cashner*, 98 F.3d at 576 (quoting *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437,

1440 (10th Cir.1990)). "Rule 60(b)(1) is not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." *Id.* at 577. "Rule 60(b) is not intended to be a substitute for a direct appeal." *Id.* at 576.

 The court concludes that Calumet has not identified an "obvious error of law" or any other extraordinary circumstance warranting reconsideration of the court's prior order. Calumet first argues that the court should have applied the bad faith exception to the tribal exhaustion doctrine. In its prior order, the court addressed this issue as follows:

> With respect to the first exception, Calumet contends that the Tribe's bad faith is evidenced by its failure to pay amounts due under the consulting agreement, its refusal to give effect to the arbitration provision, its termination of the agreement without proper notice and an opportunity to cure, and its failure to abide by a "verbal" settlement agreement reached by the parties. The court concludes that this exception does not preclude application of the tribal exhaustion rule in this case. The exception requires bad faith or a desire to harass in the *assertion of tribal court jurisdiction.* [*National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 856 n. 21, 105 S.Ct. 2447, 2454 n. 21, 85 L.Ed.2d 818

---

1. Calumet argues that, counting from October 10, when the District Court Clerk entered the order on the docket, its motion under rule 7.3 was due on October 27. Calumet further argues that its motion was timely because it mailed the motion to the court and counsel on that day. Calumet states that the court, in a September 8, 1997 telephone conference, ruled that submissions relating to the Tribe's motion to dismiss would be deemed filed on the date mailed to the court and counsel.

Any such order by the court, however, related only to briefing on the motion to dismiss, for which the court set an expedited briefing schedule. The timeliness of any motion to reconsider is governed by the federal and local rules, which in this case required that a motion under rule 7.3 be *filed* on a specific date.

Moreover, even if Calumet's motion were deemed filed on October 27, it would still be

untimely because the motion was due on October 24. The ten-day deadline under rule 7.3 is counted from the date of the order's filing, not from the date the clerical task of entering the order on the docket is performed by the Clerk. *Steele v. Ellis*, 961 F.Supp. 1458, 1467 (D.Kan. 1997).

Finally, Calumet argues that Fed.R.Civ.P. 54(b) permits revision of a non-dispositive order at any time before the case is finally adjudicated. This court has limited such "revisions", however, by enacting rule 7.3, which limits the bases for reconsideration and imposes a motion deadline.

2. The court also concludes that, even if Calumet's motion had been timely under rule 7.3, it would not be entitled to relief under the standards set forth in that rule. *See* D. Kan. Rule 7.3.

(1985).] The instances of bad faith alleged by Calumet generally go to the merits of the dispute—i.e., whether the contract has been breached—instead of the Tribal Court's assertion of jurisdiction here. *See Harvey v. Star*, 96 F.3d 1453 (10th Cir. 1996) (it is improper for the court to involve itself in the underlying dispute in determining whether the bad faith exception applies). Moreover, Calumet has not provided an affidavit or other evidence supporting its allegation concerning the alleged settlement agreement. Finally, the fact that the consulting agreement expressly provides for Tribal Court jurisdiction in certain instances further weighs against a finding that Tribal Court jurisdiction was asserted in bad faith here.

*Calumet*, 987 F.Supp. at 1327 (footnote omitted). Calumet argues that it did present evidence of the Tribe's bad faith in the form of its verified complaint. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) (verified complaint alleging facts based on personal knowledge treated as an affidavit).

Calumet has still failed to show bad faith in the assertion of Tribal Court jurisdiction. In concluding in its prior order that the exception had not been established, the court did not rely solely on Calumet's failure to present evidence, but cited other factors as well. In addition, with respect to the allegation concerning a settlement agreement, the complaint merely states that settlement discussions resulted in a "verbal" settlement agreement, that the Tribe subsequently refused to honor that agreement, and that the Tribe asserts that the agreement never existed. Such a statement, without supporting evidence or further detail, merely points to another dispute between the parties; it does not show that Tribal Court jurisdiction was asserted in bad faith.

Calumet also points to the consulting agreement's choice of law provisions in arguing that tribal exhaustion was not appropriate here. Calumet's argument concerning those provisions may support its position that the Tribal Court did not have jurisdiction here; however, as the court explained in its prior order, that argument and the question of the scope of the Tribal Court's jurisdiction must first be considered by the Tribal Court, in keeping with the tribal exhaustion doctrine.

Calumet further suggests in this regard that exhaustion is not required because the policy considerations underlying the doctrine are not furthered here in light of the Tribe's agreeing to the choice of law provisions. The court addressed this point at length in the prior order, in which the court concluded that, under the Tenth Circuit's "strict view" of the tribal exhaustion doctrine, the court had no discretion not to defer to the Tribal Court in this case. *Calumet*, 987 F.Supp. at 1329 (citing *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir.1997) and *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1537 (10th Cir.1995)). Calumet has not offered any argument suggesting that the court's prior analysis was unsound in any way, choosing instead to ignore that portion of the court's order altogether.[3] The court concludes that this basis for reconsideration must also fail.

Calumet also attacks the court's ruling that Calumet must exhaust its remedies in the Tribal Court with respect to its substantive claims as well as its jurisdictional claim.

---

**3.** Calumet cites *Altheimer & Gray v. Sioux Manufacturing Corp.*, 983 F.2d 803 (7th Cir.1993). There, the Seventh Circuit held that application of the tribal exhaustion rule would not serve the policies articulated by the Supreme Court because refusing enforcement of a choice of forum provision would in fact undercut the tribe's self-governance and self-determination. *Id.* at 815. The court there noted, however, that, unlike the present case, no case was pending in the tribal court and the federal case did not involve an attack on a tribal court's jurisdiction. *Id.* at 814. Moreover, the Tenth Circuit has explicitly held that a court should not examine the policies underlying the tribal exhaustion doctrine where, as here, the case concerns a "reservation affair." *See Kerr–McGee*, 115 F.3d at 1507; *Pittsburg & Midway*, 52 F.3d at 1537. To the extent the Seventh Circuit has adopted a contrary rule, this court is bound to follow the Tenth Circuit. For the same reason, the court declines to follow another case cited by Calumet, *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230 (8th Cir.1995), which omits any discussion of the tribal exhaustion doctrine.

Again, Calumet does not argue that the court's interpretation of Tenth Circuit precedent is incorrect. Instead, it contends that those cases are superseded by the Supreme Court's decision in *Strate v. A–1 Contractors,* —— U.S. ——, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

*Strate* does not aid Calumet here, however. In that case, a non-Indian and her adult Indian children sued another non-Indian in tribal court after an automobile collision on a state highway running through an Indian reservation. *Id.* at ——, 117 S.Ct. at 1408. After the tribal court ruled that it had jurisdiction over the suit and a tribal appellate court affirmed that ruling, the tribal court defendants brought suit in federal court seeking declaratory and injunctive relief on the basis that the tribal court had exceeded its jurisdiction. *Id.* Calumet argues that, because the federal courts in *Strate* addressed the issue of the tribal court's jurisdiction before the tribal court had ruled on the substantive claims, exhaustion of tribal court remedies is required only with respect to jurisdictional claims.

In *Strate,* however, the Court did not address the scope of the tribal exhaustion requirement. There the Court considered only whether the tribal court in that case in fact had jurisdiction. In holding that the tribal court lacked jurisdiction there, the Court stated that its earlier decisions in *National Farmers Union Insurance Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) and *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), in which the Court formulated the tribal exhaustion doctrine, did not bear on the question of the scope of tribal court jurisdiction. *Strate,* —— U.S. at ——, 117 S.Ct. at 1413. In the same way, then, *Strate,* which only addresses tribal court jurisdiction, does not bear on the question of the scope of the tribal exhaustion doctrine. In fact, there is no indication that the district court in *Strate* invoked the exhaustion doctrine. *See id.* at ——, 117 S.Ct. at 1408. Unlike the plaintiff in the present case, the

federal court plaintiffs in *Strate* did not raise any substantive claims in their complaint, but instead raised only the issue of the tribal court's jurisdiction. *Id.* Thus, because the tribal courts had already ruled on the jurisdiction issue, the entire complaint was ripe for federal court review. Accordingly, *Strate* does not suggest the Supreme Court's position one way or the other on the issue of whether exhaustion is required for substantive claims raised in the federal court complaint. In the absence of such Supreme Court direction, the court properly relied in its prior order on Tenth Circuit precedent.

■■■ Finally, Calumet requests that the court amend its prior order to certify it for interlocutory appeal under 28 U.S.C. § 1292(b).[4] The court denies this request.

Section 1292(b) states as follows:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order. . . .

The court concludes that the requirements for certification are not met here. The court agrees with the Tribe that the issue of the court's application of the tribal exhaustion doctrine is not a controlling issue of law here. The court's decision did not affect the amount or type of proceedings necessary for litigation of the claims raised in Calumet's complaint; rather, only the timing of that litigation is affected. Therefore, any error by the court in applying the exhaustion doctrine would not necessarily be subject to reversal upon appeal after Calumet's claims are eventually litigated in this court—if Calu-

---

4. The court's discussion of the timeliness of Calumet's motion for reconsideration does not apply to Calumet's request for certification under sec-

tion 1292; Fed. R.App. P. 5(a) provides that a district court order may be amended at any time to include the certification language.

met eventually prevails, it would have nothing to appeal; if it eventually loses, its appeal would be from that later decision. *See In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir.1982) (question of law is controlling under section 1292 if it would materially affect the outcome of the litigation in the district court); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974) (question of law is controlling if ruling could constitute reversible error on appeal).

Moreover, it is merely speculative whether an immediate appeal would materially advance the ultimate termination of the litigation. The amount of time needed either for Tribal Court exhaustion or an immediate appeal is unclear; in fact, the Tribal Appellate Court may yet agree with Calumet that the Tribal District Court exceeded its jurisdiction, thereby obviating the need for appellate review of the court's prior order. Finally, given the Tenth Circuit precedent controlling the court's decision here, the court does not believe that there is substantial ground for difference of opinion on the issue, as required for certification under section 1292(b).[5]

The court also denies the request by Calumet in its reply brief that the court's order be issued by separate document. Rule 58's "separate document" requirement applies to judgments, *see* Fed.R.Civ.P. 58, and the court did not grant judgment to either party by its prior order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Calumet's motion to reconsider or amend the court's October 9, 1997 order (Doc. 30) is denied.

**IT IS SO ORDERED.**

---

**5.** The court notes that, in concluding in its prior order that exhaustion is required here, it did not dismiss the action (although dismissal would have facilitated an immediate appeal) in part because Calumet requested that the action be stayed instead.