Tammy K. HARTMAN, Plaintiff,

v.

THE KICKAPOO TRIBE GAMING COMMISSION; Laura Soap; Denise Mendez; Victor Palmer; the Kickapoo Tribe of Kansas; the State of Kansas; the Kansas State Gaming Agency; Tracy Diel; the National Indian Gaming Commission; and Montie Deer, Defendants.

No. 99–4102–DES.

United States District Court, D. Kansas.

Nov. 16, 2001.

William J. Pauzauskie, Oyler & Pauzauskie, Topeka, KS, for Tammy K. Hartman.

James C. Heathman, Topeka, KS, for Kickapoo Tribe Gaming Com'n.

James W Merz, Merz & Stacy, Oklahoma City, OK, James C. Heathman, Topeka, KS, for Laura Soap, Denise Mendez, Victor Palmer, Kickapoo Tribe of Kansas.

M.J. Willoughby, Gail E. Bright, Office of Atty. General, Topeka, KS, for State of Kansas, Tracy Diel, Kansas Gaming Agency.

Jackie A. Rapstine, Office of Atty. General, Topeka, KS, for National Indian Gaming Com'n.

## *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on multiple motions filed by the parties. The defendants are separated by representation into distinct groups. For the sake of clarity, the court will refer to the multiple defendants in accordance with this established demarcation. The initial group consisting of the State of Kansas and the State Gaming Agency will be referred to as the "state defendants." Tracy Deil will also be considered a state defendant, but he has filed a separate motion to dismiss. The second group consisting of the National Indian Gaming Commission and Montie Deer will be referred to as the "federal defendants." The final group consisting of the Kickapoo Tribe Gaming Commission, the Kickapoo Tribe of Kansas, Laura Soap, Denise Mendez, and Victor Palmer will be referred to as the "tribal defendants."

The following motions are presently before the court:

1. State Defendants' Motion to Dismiss (Doc. 28), which is granted;
2. Tracy Deil's Motion to Dismiss (Doc. 30), which is granted;
3. Federal Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 51), which is granted;
4. Tribal Defendants' Motion to Dismiss (Doc. 32), which is granted.

## I. BACKGROUND

The Kickapoo Tribe of Kansas ("Tribe") is a federally recognized Indian tribe located on a reservation near Horton, Kansas. In 1995, the Tribe entered into a Gaming Compact ("Compact") with the State of Kansas ("State"), which allowed the Tribe to conduct gaming on its reservation. The Tribe operates the Golden Eagle Casino ("Golden Eagle"), a Class III gaming facility, pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.* Both the National Indian Gaming Commission ("NIGC"), through its chair, Montie Deer ("Deer") and the Kansas State Gaming Agency ("KSGA"), through its chair, Tracy Diel ("Diel"), are charged with overseeing tribal gaming.

On July 10, 1995, the Tribe adopted the Kickapoo Nation Tribal Gaming Commission Ordinance and the Kickapoo Tribal Gaming Ordinance. (Def. Exs. 4 and 5). The ordinance at issue in this case, titled, Amended Kickapoo Nation Tribal Gaming Commission Ordinance ("April 8th Ordinance"), was adopted by the Tribe on April 8, 1996. (Pl.Ex. 1). According to the NIGC records, the April 8th Ordinance was not submitted to the agency for approval. (Gov.Ex. B). For reasons unknown to this court, on April 26, 1996, the Tribe adopted a second amended ordinance ("April 26th Ordinance") substantially similar to the April 8th Ordinance. The April 26th Ordinance, however, was submitted to the NIGC for approval on May 20, 1996. In response to the submission of the April 26th Ordinance, the Chairman of the NIGC in office at the time, Harold Monteau, informed the Tribe by letter that the April 26th Ordinance did not require approval "because the amendment addresses issues not raised in the IGRA or the NIGC's regulations." (Def.Ex. 8).

Tammy Hartman ("plaintiff"), who is not an Indian, was employed by the Tribe at the Golden Eagle. Plaintiff held a State/Tribe gaming license, pursuant to the Compact. The Kickapoo Tribe Gaming Commission ("KTGC") suspended plaintiff's gaming license on April 28, 1997. The suspension followed an alleged gaming incident in which plaintiff accepted chips from a Sac and Fox Casino patron at the Sac and Fox Casino on February 27, 1997. Plaintiff was initially suspended, investigated, and cleared by her employer to return to work. Later, the Tribe reinitiat-

ed the investigation, leading to an approximate seven-day suspension of plaintiff's gaming license. The suspension was affirmed by defendants Laura Soap ("Soap"), Denise Mendez ("Mendez"), and Victor Palmer ("Palmer"), Commissioners of the KTGC, on June 26, 1997. After the suspension was affirmed, plaintiff discontinued her employment at the Golden Eagle, apparently by her own free will, and sought employment from other regional casinos. (Pl. Aff. at 4). Plaintiff was unable to maintain employment at other regional casinos because of the record of suspension at the Golden Eagle. After briefly receiving unemployment benefits, plaintiff returned to work at the Golden Eagle in the Spring of 1998. Plaintiff's gaming license was never revoked.

On August 28, 1998, plaintiff filed suit against the tribal defendants in the Kickapoo Tribal Court, Case No. CIV–98–38, alleging the Tribe's failure to provide a hearing before suspension of plaintiff's gaming license resulted in wrongful suspension of such license and violation of plaintiff's due process rights. In response, the Tribe invoked the doctrine of sovereign immunity. Following an adverse decision in the tribal district court, plaintiff appealed. Plaintiff's appeal is currently pending in Tribal court.

On June 25, 1999, plaintiff filed the present action in the United States District Court for the District of Kansas seeking equitable, monetary, and declaratory relief. Plaintiff's amended complaint raises the following eleven causes of action:

| | |
|---|---|
| Count One | The Tribe incorrectly invoked the doctrine of sovereign immunity; |
| Count Two | KTGC wrongfully suspended plaintiff's gaming license without substantive or procedural due process, and without notice and hearing in violation of IGRA; |
| Count Three | Rules and regulations, including the "appearance of impropriety" standard, are too vague for employees to be put on notice of such standard; |
| Count Four | Plaintiff was not on notice of the "appearance of impropriety" standard be- |

cause it was not published and the "appearance of impropriety" standard is not part of the IGRA directives;

| | |
|---|---|
| Count Five | The State, NIGC, KSGA, Tribe, and KTGC failed to meet the IGRA directives and/or IGRA is defective; |
| Count Six | Plaintiff was deprived of a property interest without due process when her gaming license was suspended; |
| Count Seven | Damage to reputation, emotional distress, and impaired ability to be employed; |
| Count Eight | The State failed to enforce the Compact; |
| Count Nine | KSGA and its director failed to oversee tribal gaming operations in violation of Kansas Statutes Annotated §§ 74–9804, 74–9805, thereby breaching duties owed to plaintiff to ensure gaming operations were conducted in accordance with federal, state, and Tribal law; |
| Count Ten | NIGC and its chairman approved a defective ordinance; and |
| Count Eleven | Each defendant, individually and collectively, acting under the color of state, tribal, federal agency law, and the laws of the United States deprived plaintiff of her property rights without substantive and procedural due process in violation of 42 U.S.C. § 1983. |

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

 All defendants seek dismissal of plaintiff's claims pursuant to one or more subsections of Rule 12 of the Federal Rule of Civil Procedure. In ruling on a motion to dismiss, the court accepts the veracity of all well-pleaded facts in the plaintiff's complaint and views both the facts and all reasonable inferences in the light most favorable to the plaintiff. *Housing Authority of Kaw Tribe v. City of Ponca City,* 952 F.2d 1183; 1187 (10th Cir.1991); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The pleadings must be construed liberally. *Gas–A–Car, Inc. v. American Petrofina, Inc.,* 484 F.2d 1102, 1107 (10th Cir.1973).

 The issue in reviewing the sufficiency of a complaint is not whether the plaintiff ultimately will prevail, but whether the plaintiff shall be allowed to offer

evidence to bolster the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court may not dismiss a case for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *See also Jacobs, Visconsi & Jacobs Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). In a Rule 12(b)(1) motion, the court may consider documents and other information submitted to the court in addition to the plaintiff's complaint. *Armstrong v. Goldblatt Tool Co.,* 609 F.Supp. 736, 737 (D.Kan.1985).

## B. Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.,* 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed.R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) ("The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues."). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

### A. No Private Cause of Action Under IGRA

■ As an initial matter, the court dismisses all of plaintiff's claims against all defendants brought pursuant to alleged violations of IGRA. The court, following the majority of courts who have decided the issue, finds that IGRA provides no private right of action against the Tribe, the State, the federal government or any official or agency thereof. *See, e.g., Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians,* 63 F.3d 1030, 1049 (11th Cir.1995)(finding plaintiff failed to state a claim against tribe for alleged failure to comply with IGRA's licensing requirements because no implied cause of action in IGRA); *American Greyhound Racing, Inc. v. Hull,* 146 F.Supp.2d 1012, 1053 (D.Ariz.2001)(citing 25 U.S.C. § 2710(d)(7)(A))(holding only three kinds of entities are expressly given causes of action under IGRA–Indian tribes, states, and the United States-and there is no implied private right to enforce IGRA); *Jimi Dev. Corp. v. Ute Mountain Ute Indian Tribe,* 930 F.Supp. 493, 498 (D.Colo.1996)(opining IGRA does not contain provisions giving private individuals a cause of action against tribe and state for Tribal–State Compact and Tribal Gaming Ordinance lack of compliance with IGRA); *Montgomery v. Flandreau Santee Sioux Tribe,* 905 F.Supp. 740, 744 (D.S.D.1995)(holding no private cause of action under IGRA for family alleging its tribe practiced favoritism in distributing casino profits).

■ Additionally, violations of a federal statute alone do not create a private right of action under a statute. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.")(internal citations omitted). Congress provided remedies for certain causes of action under IGRA as enumerated in 25 U.S.C. § 2710(d)(7)(A)(i-iii). These remedies do not include the right for a private individual to sue for lack of compliance with IGRA. Had Congress intended a private cause of action under IGRA, it would have provided for it explicitly. *Tamiami,* 63 F.3d at 1049 (citing *Redington,* 442 U.S. at 572, 99 S.Ct. 2479)("Obviously, then, when Congress wished to provide a private ... remedy, it knew how to do so and did so expressly."). "When legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *National R.R. Passenger Corp. v. National Assoc. of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

### B. State Defendants

Plaintiff's amended complaint includes claims against the State of Kansas, the KSGA, and Tracy Diel, Executive Director of the State Gaming Agency, brought pursuant to 42 U.S.C. § 1983, IGRA, and what appears to be state law negligence based claims for failure to enforce the Compact and failure to oversee tribal gaming operations. As stated above, inasmuch as plaintiff argues the state defendants' conduct violated IGRA, her claims are dismissed because she, as a private individual, cannot state a claim pursuant to IGRA. For the following reasons, plaintiff's other claims against the state defendants are also dismissed.

#### 1. State of Kansas and Kansas State Gaming Agency

##### a. Eleventh Amendment Immunity

■ The State and the KSGA contend the Eleventh Amendment to the United States Constitution bars suits for damages

in federal court against a state or a state's agencies. It is well settled that, in the absence of consent, the Eleventh Amendment to the United States Constitution prohibits the State of Kansas or one of its agencies from being sued in federal court. *See Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1560 (10th Cir.1992)(citing *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)); *Reiger v. Kansas Pub. Employees Retirement Sys.*, 755 F.Supp. 360, 361 (D.Kan.1990)(holding the Eleventh Amendment bars suits in federal court against the State of Kansas or one of its agencies). This principal holds true regardless of the nature of relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Reiger*, 755 F.Supp. at 361.

Plaintiff contends the immunity provided by the Eleventh Amendment does not extend to the state defendants because the State submitted to the jurisdiction of this court per the Compact entered into by the State and the Tribe. Specifically, in section thirty-one of the Compact, the Tribe and the State agreed to litigate in the United States District Court if a party refused to participate in arbitration or if enforcement of a settlement or arbitration decision became necessary. (Pl.Ex. 2 at 42–43).[1]

■ The court applies a "a stringent test" to determine if a state has waived its Eleventh Amendment Immunity. *Mescalero Apache Tribe v. New Mexico*, 131 F.3d 1379, 1385 n. 4 (10th Cir.1997)(internal citations omitted). "The waiver must be unequivocal which means only where stated by the most express language or by such overwhelming implication from the text of a state statutory or constitutional provision as will leave no room for any other reasonable construction." *Id.* (internal citations and quotations omitted).

■ The court finds the language in the Compact, requiring federal jurisdiction for settlement of disputes between the State and the Tribe, does not unequivocally waive the State's Eleventh Amendment immunity. The limited waiver of immunity provided for in the Compact does not extend to expose the state to suit in federal court by a private individual. Instead, the provision should be read only to subject the State and the Tribe to the jurisdiction of this court when one of the parties fails to participate in arbitration or fails to implement the terms of an arbitration agreement.

Additionally, plaintiff's assertion that the State and the KSGA cannot raise the Eleventh Amendment immunity defense because Congress's " 'unmistakably clear' intent to abrogate Eleventh Amendment immunity" in IGRA, is a clear misstatement of the law. (Pl. Resp. and Obj. to State Def.'s Mot. to Dismiss at 5). To support her claim, plaintiff cites the Supreme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 56–57, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Contrary to plaintiff's assertion, the *Seminole Tribe* Court definitively held that Congress did not validly abrogate the states' Eleventh Amendment immunity in

---

1. The precise language at issue in the Compact reads as follows:

 If enforcement of a settlement or arbitration decision becomes necessary by reason of failure of one or both parties to implement its terms voluntarily, or if one of the parties refused to participate in arbitration as provided in this Section and the other party seeks enforcement of any provision of this Compact, the Tribe and the State agree that the matter may be resolved by judicial resolution and enforcement and that venue for judicial resolution and enforcement shall be in the United States District Court for Kansas pursuant to the specific provisions of this Section.

 (Pl. Comp., Ex. 2 at 42–43).

IGRA. *Seminole Tribe,* 517 U.S. at 76, 116 S.Ct. 1114. The Court held that while Congress intended to abrogate Eleventh Amendment immunity it was without the authority to do so. *Seminole Tribe,* 517 U.S. at 73, 116 S.Ct. 1114.

### b. 42 U.S.C. § 1983

 Plaintiff contends all defendants individually and collectively, acting under the color of state law, deprived her of her property (gaming license) without due process of law and are thus liable under 42 U.S.C. § 1983.[2] Plaintiff's § 1983 claim against the State and the KSGA may not go forward because a state or state agency is not a "person" for purposes of § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Reiger v. Kansas Pub. Employees Retirement Sys.,* 755 F.Supp. 360 (D. Kan.1990) (Saffels, J.)(holding Kansas Public Employees Retirement System is not, as a state agency, considered a "person" for purposes of § 1983 liability).

Plaintiff's assertion that KSGA is considered a "person" within the meaning of § 1983 because it is an "arm" of the Compact instead of an "arm" of the state is wholly rejected by the court. Plaintiff cites no authority and the court knows of no authority supporting such a proposition.

### 2. Tracy Diel

 The Eleventh Amendment precludes federal courts from assessing damages against state officials sued in their official capacities. *Hunt v. Bennett,* 17

F.3d 1263, 1267 (10th Cir.1994)(citing *Russ v. Uppah,* 972 F.2d 300, 302–03 (10th Cir. 1992)). The Eleventh Amendment, however, does not bar suits seeking damages against state officials in their individual capacities. *Id.* (citing *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). Because plaintiff's amended complaint refers to Diel by his official title, Executive Director of the State Gaming Agency, and refers to an alleged failure by him to act in his official capacity, the court will presume he was sued in his official capacity.[3] *Croft v. Harder,* 730 F.Supp. 342, 349 (D.Kan.1989)(finding when plaintiff names defendants by name along with their job titles, the court may presume officials have been sued in their official capacities only). Thus, inasmuch as plaintiff requests monetary damages from Diel, her claims are barred by the Eleventh Amendment.

 The Eleventh Amendment does not provide state officials with immunity if they are sued in their official capacities for injunctive relief on federal claims under the Fourteenth Amendment. *See Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304; *Ex parte Young,* 209 U.S. 123, 156–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Plaintiff complains that the suspension of her gaming license without a hearing was a violation of due process. This violation of the Fourteenth Amendment was allegedly perpetrated by the Tribe and the KTGC, not by Diel or the KSGC. The state defendants, including Diel, did not suspend plaintiff's gaming license. Plaintiff's

---

**2.** The relevant portions of § 1983 include, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subjects ... any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law ...."

**3.** In plaintiff's Response and Objection to State Defendants' Motion to Dismiss (Doc. 58), she states that she sued Deil in his individual capacity because she contacted him in the Spring of 1998 "in his individual capacity and was denied assistance by him." This back door attempt to amend plaintiff's amended complaint is not accepted by the court.

claims against Diel are founded in his alleged failure to comply with state law (i.e. failure to oversee gaming operations pursuant to Kansas Statutes Annotated § 74–9805 and failure to enforce the Compact).

 A suit alleging a state official violated *state* law in carrying out their official duties is barred by the Eleventh Amendment. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900. Plaintiff alleges that in contravention of Kansas Statutes Annotated § 74–9805, Diel and the State failed to ensure the Tribe conducted its operation in compliance with IGRA. Any type of action, whether seeking prospective or retroactive relief, against a state official based on a state law violation, "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106, 104 S.Ct. 900. As the *Pennhurst* court stated, "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106, 104 S.Ct. 900. Thus, plaintiff's claims against Diel are dismissed.

### C. Federal Defendants

Plaintiff's claims against the federal defendants, NIGC and Montie Deer, current chairman of the NIGC, center around the alleged approval by the NIGC of the April 8th Ordinance. (Pl.Ex. 1) Before a tribe may operate a Class III gaming facility, IGRA requires adoption of a tribal ordinance or resolution by the tribe. 25 U.S.C. § 2710(d). After adoption by the tribe, the Chairman of NIGC, in this case Deer, "shall approve [an] ordinance or resolution" no later than ninety days after its submission by the tribe, provided the ordinance complies with IGRA. 25 U.S.C. § 2710(e).

Plaintiff alleges the April 8th Ordinance was defective in that it failed to provide constitutional due process guarantees depriving her of property and liberty interests in violation of IGRA. Plaintiff contends the federal defendants' approval of the April 8th Ordinance enabled the tribal defendants to violate her due process rights by suspending her gaming license without a formal hearing. Federal defendants' pending motion to dismiss, or in the alternative, motion for summary judgment claims they are entitled to be dismissed from this action for lack of proper service, lack of personal and subject matter jurisdictions, failure to exhaust administrative remedies, lack of standing, expiration of statute of limitations, and failure to state a claim.

### 1. 25 U.S.C. § 1983

 Plaintiff cannot state a claim against the federal defendants based on § 1983 because the statute applies only to actions taken under state law. *Smith v. Kitchen,* 156 F.3d 1025, 1028 (10th Cir. 1997); *Davis v. United States,* 439 F.2d 1118, 1119 (8th Cir.1971). The actions taken by the federal defendants of which plaintiff complains were actions taken pursuant to federal law, specifically IGRA. Because plaintiff's complaint alleges conduct under the color of federal law (IGRA), there is no liability under § 1983.

 Plaintiff's claims against Deer can be construed as an attempt to bring a *Bivens* action. *See Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A *Bivens* action is analogous to a § 1983 action with the only difference being that a *Bivens* actions applies to constitutional violations by federal officials rather than state actors. *Evans v. Ball,* 168 F.3d 856, 858 (5th Cir.1999). To state a claim in a *Bivens* action, however, plaintiff must set forth facts detailing deprivation of federally protected rights performed by a federal agent under the color

of federal law. *Lawson v. Liburdi*, 114 F.Supp.2d 31, 37 (D.R.I.2000).

 Plaintiff's complaint does not include facts regarding the deprivation of her federally protected rights by Deer. Plaintiff's only complaint against Deer is that his agency approved an allegedly defective ordinance. Plaintiff has provided no support for the allegation that she has a federally protected right in the approval of an ordinance by the NIGC and the court knows of no such authority. In fact, IGRA was enacted and NIGC was established "to provide a statutory basis for operating Indian gaming to promote economic development, to shield tribes from organized crime, to assure fairness to operators and players, and to establish a Federal regulatory authority for Indian gaming to meet congressional concerns." *Tamiami*, 63 F.3d at 1032–33 (quoting S. REP. No. 446, 100th Cong., 2d Sess. 15–16 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 3085–86). IGRA was not enacted to provide a federal cause of action for casino employees against the NIGC or it's Commissioner.

Because federal defendants cannot be held liable under § 1983 and because plaintiff is unable to establish a claim under *Bivens,* plaintiff's claims against the federal defendants brought pursuant to § 1983 are dismissed.

### 2. IGRA Violations

 As stated previously, inasmuch as plaintiff claims federal defendants' actions violated IGRA, she has failed to state a claim upon which relief can be granted. IGRA may not be enforced by private individuals. *Tamiami Partners,* 63 F.3d at 1049 (11th Cir.1995). Thus, plaintiff's claims that the NIGC or it's commissioner failed to meet the IGRA directives are dismissed.

### 3. Summary Judgment

 As an alternative holding, the court also grants federal defendants' motion for summary judgment. As stated previously, plaintiff's sole complaint against the federal defendants is the NIGC and its Chairman approved the April 8th Ordinance which was allegedly defective. The court finds, however, the April 8th Ordinance was not submitted to the NIGC for approval so the NIGC did not have the opportunity to approve it.

Federal defendants presented the affidavit of Frances Fragua, the legal assistant in the NIGC office who reviews all tribal gaming ordinances submitted to the NIGC for approval. (Gov.Ex. B). According to Ms. Fragua's affidavit, the NIGC records indicate that the April 8th Ordinance was never submitted to the NIGC. (Gov.Ex. B). The only amended ordinance submitted to NIGC was the April 26th Ordinance. (Gov.Ex. 7). Plaintiff fails to address this discrepancy in her response to federal defendants' motion for summary judgment. Instead, plaintiff simply argues the NIGC must approve every ordinance. The court finds, however, that if the April 8th Ordinance was never received by the NIGC, it would have been impossible for the NIGC to approve the ordinance.

 Additionally, even if the April 8th Ordinance had been submitted to the NIGC, the court rejects plaintiff's contention that every ordinance must be approved or disapproved by the NIGC. An amendment to an ordinance does not require NIGC approval if it addressed issues not raised in the IGRA or the NIGC's regulations. (Gov.Ex. 8)(letter from NIGC chairman to Tribe denying approval of April 26th Ordinance because the amended ordinance "addresses issues not raised in the IGRA or in the NIGC's regulations."). The only provisions required for such ordinances are those listed in 25 U.S.C.

§ 2710(b)(2), as incorporated through 25 U.S.C. § 2710(d)(1)(A) and in 25 C.F.R. Part 522. Incidentally, none of these provisions require an ordinance to contain language requiring a formal hearing before a gaming license is suspended.

Ms. Fragua's declaration and the attached exhibits clearly establish the NICG and its chairperson did not approve the April 8th Ordinance. Because the April 8th Ordinance, the ordinance which plaintiff claims failed to provide constitutional due process guarantees, was never approved by the NIGC, the federal defendants are entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.[4]

### D. Tribal Defendants

In their motion to dismiss, the tribal defendants contend sovereign immunity is a bar to plaintiff's claims, and the doctrine of exhaustion of tribal remedies requires the court to dismiss plaintiff's claims. Because the court finds the exhaustion of remedies doctrine requires granting tribal defendants' motion to dismiss, it will be unnecessary to determine whether the tribe has the benefit of sovereign immunity under the circumstances of this case.

The Supreme Court first articulated the tribal court exhaustion doctrine in *National Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). In *National Farmers* the Court announced that "Congress is committed to a policy of supporting tribal self-government and self-determination." 471 U.S. at 856, 105 S.Ct. 2447. To further that policy, the court found that the question of whether tribal courts have jurisdiction over a matter involving non-Indians in civil cases should first be addressed

in the tribal courts. *National Farmers*, 471 U.S. at 856, 105 S.Ct. 2447. The Supreme Court explained further in *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 18, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), that "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty," and "[c]ivil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." The Tenth Circuit, in promoting its expansive application of the exhaustion doctrine, has held that tribal court remedies must be exhausted with respect to issues other than the scope of the tribal court's jurisdiction. *See Calumet Gaming Group–Kansas, Inc. v. Kickapoo Tribe*, 987 F.Supp. 1321, 1328 (D.Kan.1997)(citing *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166 (10th Cir.1992); *Brown v. Washoe Housing Auth.*, 835 F.2d 1327 (10th Cir.1988)).

 Three circumstances exist under which the application of the tribal exhaustion doctrine does not operate. First, the doctrine does not apply where an assertion of tribal court jurisdiction is motivated by harassment or conducted in bad faith. *National Farmers*, 471 U.S. at 856 n. 21, 105 S.Ct. 2447. Second, the tribal court exhaustion doctrine will not apply when the tribal court action violates express jurisdictional prohibitions. *Id.* Finally, the court does not apply the tribal exhaustion doctrine if tribal court exhaustion would be futile because of inadequate opportunity to challenge tribal court's jurisdiction. *Id.*

Only the second exception to the tribal exhaustion rule raises some concern in this case. Plaintiff argues her case against

---

4. Even if the April 8th Ordinance had been approved by the NIGC, it is highly unlikely plaintiff would have a cause of action against the NIGC and its chairman. The court, however, finds it unnecessary to make this determination as the April 8th Ordinance was neither approved or disapproved by the NIGC.

tribal defendants centers around the Tribe's failure to comply with IGRA, that IGRA provides for exclusive federal jurisdiction when Tribes fail to comply with its provisions, and thus the tribal exhaustion doctrine is inapplicable in this case. Plaintiff's argument fails because IGRA does not provide for a private cause of action by which an individual can sue a Tribe for non-compliance. *See Tamiami Partners*, 63 F.3d at 1049. Thus, whether or not IGRA provides for exclusive federal jurisdiction is irrelevant.

Furthermore, plaintiff's contention that IGRA provides for exclusive jurisdiction under all circumstances is incorrect. IGRA only provides for exclusive federal jurisdiction in limited circumstances. *See* 25 U.S.C. § 2710(d)(7)(A)(i-iii). Under 25 U.S.C. § 2710(d)(7)(A)(i-iii) the federal courts have jurisdiction only when an action brought pursuant to IGRA is initiated by the State, the Tribe, or the United States. IGRA does not provide for federal jurisdiction when, as in this case, a private individual brings suit against a tribe.[5]

Although the court finds that exceptions to the tribal exhaustion doctrine do not apply, it is still necessary to evaluate the comity concerns that provide a basis for the tribal exhaustion doctrine. The comity concerns providing the basis for the tribal exhaustion doctrine were articulated by the *National Farmers* court as follows:

(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary.

*Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir.1997) (citing *National Farmers*, 471 U.S. at 856–57, 105 S.Ct. 2447). If these policies behind the tribal exhaustion doctrine are served by enforcing the doctrine, " 'comity requires the parties to exhaust their tribal remedies before presenting their dispute to the district court.' " *Kerr–McGee*, 115 F.3d at 1507 (quoting *Texaco Inc. v. Zah*, 5 F.3d 1374, 1378 (10th Cir.1993)).[6]

It is unnecessary, however, for the court to engage in a detailed comity analysis because when none of the recognized exceptions to the doctrine apply, and the dispute concerns a "reservation affair" or the dispute "arises on the reservation" "there is no discretion not to defer" to the tribal courts. *Kerr–McGee*, 115 F.3d at 1507 (quoting *Zah*, 5 F.3d at 1378). Thus, federal courts may abstain without first analyzing the comity and tribal sovereignty issues discussed in *National Farmers*. *See Potaluck Corp. v. Prairie Band of Potawatomi Indians*, No. 99–2051, 2000 WL 1721797, at *2 (D.Kan. Aug.23, 2000)(holding that plaintiff, a private corporation who had a contract dispute with tribe, must exhaust its remedies in the tribal court system before it may raise the

---

**5.** Any agreement between the Tribe and State consenting to federal jurisdiction in the Compact is also irrelevant. First, as mentioned, *supra* at Part III.B.1.a, the limited consent to federal jurisdiction does not apply to a private individual suing either the State or the Tribe. Instead, the Compact only contemplates federal jurisdiction when the Tribe or the State sought to enforce an arbitration agreement. Furthermore, federal jurisdiction, as opposed to tribal jurisdiction, cannot be established by

consent. *See Brown*, 835 F.2d at 1328 (internal citations omitted).

**6.** It is also important to note that "[t]he policies behind abstention are most strongly implicated when a federal court action is brought after a tribal court action has already been filed" as has occurred in this case. *Pittsburg & Midway Coal Mining Co. v. Watchman*, 52 F.3d 1531, 1537 (10th Cir.1995).

same issues in federal court); *See also Calumet Gaming Group–Kansas*, 987 F.Supp. at 1329(finding an action concerning the performance of contracts relating to a gaming operation located on the Tribe's reservation is a "reservation affair").

■■ The court concludes this case "arises on the reservation" because occurrences which gave rise to this litigation (i.e. the suspension of plaintiff's gaming license) occurred on the reservation. Because the facts of this case arose on the reservation, the comity concerns identified in *Kerr–McGee* dictate that the parties exhaust their tribal remedies before resorting to the federal forum, thus this court has "no discretion not to defer" to the tribal court. *Kerr–McGee*, 115 F.3d at 1507.

■■■ In applying the tribal exhaustion rule, the court has discretion as to whether to stay or to dismiss the federal action. *See National Farmers*, 471 U.S. at 857, 105 S.Ct. 2447; *Iowa Mutual*, 480 U.S. at 20 n. 14, 107 S.Ct. 971. The court determines that this case should be dismissed.[7] The dismissal without prejudice will allow plaintiff to return to federal court once she has exhausted her tribal court remedies. Exhaustion includes, at a minimum, tribal appellate court review. *Iowa Mutual*, 480 U.S. at 16 n. 8, 107 S.Ct. 971.

## III. CONCLUSION

Plaintiff's claims against all defendants brought pursuant to violations of IGRA are dismissed as IGRA may not be enforced by private individuals. Plaintiff's claims against the State and the KSGA are dismissed because the Eleventh Amendment bars suits against the State and its agencies in federal court. Additionally, plaintiff's claims against the State and KSGA brought pursuant to 42 U.S.C. § 1983 are dismissed because a state or its agency are not considered "persons" who may be sued under § 1983. Plaintiff's claims against Tracy Diel are dismissed because a suit alleging a state official violated state law is also barred by the Eleventh Amendment. All claims against the federal defendants are also dismissed. Plaintiff's claims against the federal defendants brought pursuant to § 1983 are dismissed because § 1983 applies only to actions taken under state law and the actions taken by the federal defendants of which plaintiff complains were actions taken pursuant to federal law. Additionally, plaintiff failed to state a *Bivens* action against Deer because plaintiff does not have a federally protected right in the approval or disapproval of ordinances by the Commissioner of the NICG. In the alternative, the federal defendants' motion for summary judgment is granted because the April 8th Ordinance was neither received by or approved by the NICG. Finally, plaintiff's claims against the tribal defendants are dismissed because plaintiff failed to exhaust her remedies in tribal court.

**IT IS THEREFORE BY THE COURT ORDERED** that:

1. Defendants State of Kansas and Kansas State Gaming Agency's Motion to Dismiss (Doc. 28) is granted;

2. Defendant Tracy Deil's Motion to Dismiss (Doc. 30) is granted;

3. Defendants National Indian Gaming Commission and Montie Deer's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 51) is granted;

---

**7.** This case must be dismissed as a matter of comity, not because the court lacks subject matter jurisdiction. *See Washoe Housing Authority*, 835 F.2d at 1328. Once the tribal court has acted, its determination is subject to review in federal court. *Id.* at 1329 (citing *Iowa Mutual*, 107 S.Ct. at 978).

4. Defendants Kickapoo Tribe Gaming Commission, Laura Soap, Denise Mendez, Victor Palmer, and the Kickapoo Tribe of Kansas' Motion to Dismiss (Doc. 32) is granted without prejudice.